**In re Billy DYE & Catherine L. Dye, Debtors.**

**Bankruptcy No. 87–12176FM.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Nov. 29, 1989.

Frederick E. Walker, Austin, Tex., for debtor.

G. Ray Hendren, Austin, Tex., Trustee.

### MEMORANDUM OPINION

FRANK R. MONROE, Bankruptcy Judge.

Came on for hearing the 23rd day of October 1989, the Objection To Proof Of Claim Filed By The Veterans' Administration (the "Objection") filed by the Debtors, and appeared the Debtors by and through their counsel of record, and appeared the Secretary of the Veterans Affairs by and

through its counsel of record in opposition to the Objection, and the Court, after reviewing the Objection and the Response To Debtors' Objection To Proof Of Claim filed by the Secretary of Veterans Affairs, and having listened to argument of counsel makes the following Findings and Conclusions in accordance with Bankruptcy Rule 7052.

## FINDINGS OF FACT

1. Billy and Catherine L. Dye filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas under Case No. 87–11071 (the "Chapter 7 Case") on the 9th day of June, 1987.

2. Billy and Catherine L. Dye received a discharge in the Chapter 7 Case pursuant to a Discharge Order entered on September 16, 1987.

3. Less than thirty (30) days later on October 13, 1987, Billy and Catherine L. Dye instituted this Chapter 13 case (the "Chapter 13 Case") by voluntary petition.

4. The Debtors have filed the ever popular "Chapter 20 case".

5. The purpose of the filing of the Chapter 7 Case was to obtain a discharge of indebtedness not excepted from discharge by 11 U.S.C. § 523, and such occurred.

6. The purpose of the Chapter 13 Case, from a review of the confirmed plan therein, was to pay over time certain tax claims (primarily Internal Revenue Service) that were not discharged in the Chapter 7 Case. No unsecured creditors were listed.

7. The Veterans' Administration had guaranteed a loan of Billy Dye obtained for the purchase of a mobile home from Ft. Wayne Mortgage Company in 1983 pursuant to 38 U.S.C. § 1801 et seq.

8. The Veterans' Administration was neither listed upon the schedules in the Chapter 7 Case or the Chapter 13 Case apparently through mistake or inadvertence.

9. The first knowledge that the Veterans' Administration had with regard to the Chapter 7 Case was when it was notified in February, 1988 by Ft. Wayne Mortgage Company that Billy Dye was in default under the mobile home financing and had filed the Chapter 7 Case. This was after the time for filing complaints to determine the dischargeability of debts in the Chapter 7 Case.

10. Subsequently, the Veterans' Administration honored its guaranty and purchased the note it had guaranteed.

11. In May, 1989, after the Veterans' Administration had begun offsetting its mobile home loan guaranty debt against certain of Billy Dye's veteran benefits, it received a letter from Billy Dye at its regional office in Waco, Texas. In that letter, the Debtor included a copy of his Discharge Order in the Chapter 7 Case.

12. The Veterans' Administration responded to the Debtor's letter notifying the Debtors that their indebtedness had not been discharged because they had no knowledge of the Chapter 7 Case in time to file a Proof of Claim, and, therefore, the offsets against Mr. Dye's veteran's benefits would continue.

13. Only then did the Debtor reply that he had filed a second bankruptcy case, the Chapter 13 Case. That notification was by letter from the Debtors' attorney received by the Veterans' Administration on June 23, 1989. Receipt of that letter was the first knowledge that the Veterans' Administration had of the pendency of the Chapter 13 Case.

14. The Veterans' Administration filed its unsecured Proof of Claim in the Chapter 13 Case on June 27, 1989, in the amount of $5,566.60.

15. The Chapter 7 Case is a no-asset case, that is, there were no assets other than exempt assets.

16. In the Chapter 7 Case, notice was sent to all scheduled creditors that they need not file a proof of claim since it was a no-asset case, and that if the character of the case changed so that there were assets to be distributed to unsecured creditors, a further notice would be sent and the credi-

tors would have additional time within which to file their respective claims.

17. The Chapter 7 Case was closed on December 31, 1987, without the additional type of notice described in paragraph 16 having ever been sent. However, notice of the last day for the filing of complaints under 11 U.S.C. § 523 and § 727 was sent. The Veterans' Administration not being scheduled, however, never got that notice.

## ARGUMENTS OF THE PARTIES

1. The Debtors argue that since the time for filing claims in the Chapter 7 Case has not yet elapsed, the indebtedness to the Veterans' Administration has been discharged. The Debtors rely primarily on *Stark v. St. Mary's Hospital (Matter of Stark)*, 717 F.2d 322 (7th Cir.1983). Specifically, they argue that even though the Veterans' Administration was not scheduled nor did it have actual knowledge of the pendency of the Chapter 7 proceeding until February 1988, ninety days after the first date set the Section 341 Meeting of Creditors, which is the normal bar date for filing proofs of claim in a Chapter 7 Case, *In re Stark* authorizes the reopening of the Chapter 7, Case, the scheduling of the indebtedness to the Veterans' Administration on Amended Schedules, and the resultant discharge of its indebtedness pursuant to the Discharge Order.

The Debtors' second argument is that it is in the interest of judicial economy not to make the Debtors go through the ministerial acts of compliance with the *Stark* case, and accordingly, this Court should simply consider the indebtedness to the Veterans' Administration as being discharged.

2. The Veterans' Administration relies primarily on the argument that unless actual notice is received in time to file a proof of claim the debt is not discharged, citing *U.S. v. Scheiner*, 308 F.Supp. 1315 (S.D.N.Y.1970) and *U.S. v. Kassan*, 208 F.Supp. 858 (S.D.Cal.1962).

## ISSUES PRESENTED

1. Is the procedure outlined in the *Stark* case simply ministerial so that this Court can waive compliance therewith in the name of "judicial economy" and accordingly, treat the Veterans' Administration claim as being summarily discharged?

2. In a no-asset Chapter 7 should the Debtor be allowed to amend its schedules and add creditors after the expiration of the claims period where there is no fraud or malevolent intention and where the creditor was omitted through mistake or inadvertence so as to effect a discharge of the omitted creditor's indebtedness?

3. What effect, if any, does the subsequent filing of the Chapter 13 Case by these Debtors have on issue number two?

## CONCLUSIONS OF LAW

*Issue No. 1.* It is clear that at this time the Chapter 7 Case (previously closed) has not been reopened, that the Veterans' Administration was not scheduled as a creditor in the Chapter 7 Case, and that the Veterans' Administration had no knowledge of the Chapter 7 Case in time to put forward any objections to dischargeability (or § 727 objections) of its indebtedness that it may have. There presently exist substantive rights that the Veterans' Administration has with regard to any application to reopen the Chapter 7 Case, should one be filed, as well as the activities that would follow such a reopening, should it be permitted. This Court is not prepared to take those rights away from the Veterans' Administration in the name of judicial economy.

Further, authority exists which would cast the reopening of the Chapter 7 Case as "futile" insofar as such reopening having any effect whatsoever upon the issue of whether the Veterans' Administration's claim was discharged in the Chapter 7 Case. See, *In re Karamitsos*, 88 B.R. 122 (Bankr.S.D.Tex.1988).

Accordingly, the abbreviated procedure suggested by the Debtors will be rejected.

*Issue No. 2.* (A) Even though no motion to reopen the Chapter 7 Case has yet been filed, this Court feels constrained to write on the subject as if one had been filed due to the Debtors' position that such action is anticipated and will result in their obtain-

ing the relief they have sought by the instant objection to the Veterans' Administration's claim in the Chapter 13 Case.

The circuit courts have not been in agreement with regard to the resolution of this issue. One line of cases takes the position that since the creditor in question would not have received any dividends out of the bankrupt's estate as it contained no assets, 11 U.S.C. § 523(a)(3) should be ignored unless there is evidence of fraud, intentional design, or disregard for the accuracy of the schedules and the creditor was omitted other than through simple inadvertence. See, *Rosinski v. Boyd (In re Rosinski)*, 759 F.2d 539 (6th Cir.1985); *Stark v. St. Mary's Hospital (Matter of Stark)*, 717 F.2d 322 (7th Cir.1983).

The other line of cases holds that the fact that the creditor would not have received any dividend from a no-asset case is not a sufficient reason to disregard 11 U.S.C. § 523(a)(3). See, *Milando v. Perrone*, 157 F.2d 1002 (2nd Cir.1946) and *Laczko v. Gentran, Inc. (In re Laczko)*, 37 B.R. 676 (9th Cir.B.A.P., 1984) Aff'd., 772 F.2d 912 (9th Cir.1985).

The Fifth Circuit falls in line with the first line of cases having written on the subject interpreting Section 17(a)(3) of the prior Bankruptcy Act in *Robinson v. Mann*, 339 F.2d 547 (5th Cir.1964), "Where the Court held that bankruptcy courts have the discretion to invoke their equity powers to allow amendment of schedules after the expiration of the claims period under exceptional circumstances, and the Court suggested such circumstances exist where (1) the case is a no-asset one, (2) there is no fraud or intentional laches and (3) the creditor was omitted through mistake or inadvertence." *Laczko*, supra at 678.

Here, the Debtors suggest that an even a more favorable fact situation exists since, even though the case is closed, the time for filing claims has not yet expired. They argue that the proper procedure would be for them to file an application seeking reopening of the Chapter 7 Case to allow the scheduling of the Veterans' Administration, from which activity an ultimate finding that the debt of the Veterans' Administration is discharged by the Discharge Order entered in the Chapter 7 Case could be made.

Based upon *Robinson v. Mann*, that could possibly be the appropriate result. However, this Court is not persuaded such result is automatically the case in the event of a reopening of a no-asset Chapter 7 case. The bankruptcy court in the Southern District of Texas wrote on this subject in *In re Karamitsos*, supra. Judge Mahoney was very clear concerning the effect of the filing of a motion to reopen a Chapter 7 case where the sole purpose is to amend the schedules to include previously omitted creditors. Specifically, the Court stated:

"The filing of an amended creditor schedule after discharge has been granted in a no asset Chapter 7 case has absolutely no effect on the dischargeability of debt. *In re Anderson*, 72 B.R. 495 (Bankr.D. Minn.1987). Determination regarding such a discharge is properly brought in bankruptcy court through an adversary proceeding commenced by the filing of a complaint.

A discharge under 11 U.S.C. § 727 acts as a complete discharge of all debts. Section 523(a) delineates debts that are excepted from discharge. The scope of the discharge is final when entered. Therefore, a judicial determination of which debts, if any, are to be excepted from discharge is required. Reopening a case to allow amendment of schedules is futile. The debt in question is either discharged or excepted from discharge based on a judicial analysis of 11 U.S.C. § 523(a)(3)."

*In re Karamitsos*, supra at 122–23. Judge Mahoney went on to explain that reopening the no-asset Chapter 7 case would not have the desired effect of extending the time to file complaints to determine dischargeability of indebtedness stating that either a creditor has actual notice in time to act within the time constraints of the Chapter 7 case or they did not, and amending the schedules cannot change that. For decisions in accord see, *In re Parmer*, 98 B.R. 277 (Bankr.N.D.Tex.1989); *Key Capital Corp. v. Chapman (Matter of Chapman)*,

90 B.R. 503 (Bankr.M.D.Fla.1988); and *Brown v. General Motors Acceptance Corporation (In re Brown),* 27 B.R. 151 (Bankr.N.D.Ohio, W.D.1982).

(B) Even though no adversary proceeding has been filed by either the Debtors or the Veterans' Administration to put before this Court in a proper procedural form the issue of whether or not the indebtedness of the Veterans' Administration was discharged by the Discharge Order in the Chapter 7 Case, this Court will treat the Objection filed by the Debtors as placing the issue of the "discharge" of the claim of the Veterans' Administration before this Court due to the Debtors' professed wish for judicial economy. Further, the fact issues required to be determined to resolve the Objection at hand are the same whether brought before this Court by complaint or by the instant contested matter. There simply appears to be no good reason in this factually simple case to elevate procedural form over substance.

Therefore, based on the Findings of Fact contained in this Memorandum Opinion, this Court concludes that the outcome of any such adversary proceeding would clearly be that the indebtedness of the Veterans' Administration falls within the exception to discharge contained in 11 U.S.C. § 523(a)(3)(B). Accordingly, this Court concludes that the claim of the Veterans' Administration in the Chapter 13 Case was not discharged in the Chapter 7 Case. It is, therefore, allowed in this Chapter 13 Case.

*Issue No. 3.* As noted above, no motion to reopen the Chapter 7 Case has yet been filed. Even so, this Court feels it appropriate to write on this issue as well due to the Debtors' position as set forth above with regard to the necessity of filing such a motion and since the Debtors have brought the issue before this Court as a contested matter without objection thereto from the Veterans' Administration.

Chapter 20 is growing and becoming more popular in use across the Country. Clearly, it was not intended as a legitimate result of the enactment of the Bankruptcy Code. It appears to be the product of ingenious lawyers; and Congress, although it has had the opportunity to do so since the use of Chapter 20 has become vogue, has not acted to prohibit such activity.

However, the rapid fire filing of Chapter 13 upon the tails of a discharge order in a preceding Chapter 7 is not without consequences. This appears to be one of those cases where consequences should flow. This also appears to be a case of first impression as this Court can find no previous interpretation of this factual situation.

The basic rationale of the line of cases, represented by the *Robinson* Case in the Fifth Circuit, allowing reopening of Chapter 7 no-asset cases in order to allow the scheduling of an omitted creditor so that the omitted creditor will be subject to the discharge granted in that case seems to be, "no harm, no foul". That is, the courts have exercised their equitable powers to say that the discharge should be effective because, even if the creditor had been scheduled, it would have received nothing.

Such logic escapes this Court. The conclusion seems to beg the question. Logically extended, that argument could mean that an unscheduled creditor in a Chapter 7 case in which a 25% dividend was paid to unsecured creditors would, by simple reopening of the case and the resultant scheduling of such creditor, be discharged on all but 25% of its debt. However, it is clearly the law that in an asset case if the creditor is not scheduled and has no actual knowledge of the case in time file a claim, the entirety of the debt is not discharged.

Regardless of that, here we have a fact situation that is logically distinguishable from those cases. A Chapter 13 Case which was filed immediately after the Discharge Order in the Chapter 7 Case is still pending. Therefore, we have in such Chapter 13 Case, a vehicle by which the creditor is able to participate in the Debtors' ongoing march toward fiscal health. Reopening the Chapter 7 Case to allow these Debtors to schedule the Veterans' Administration so that the Discharge Order in the Chapter 7 Case would discharge the present obligation of the Veterans' Administration would not only be improper in view of its

**140**

pending Chapter 13 Case, but it would also be harmful to the Veterans' Administration. It would be an abuse of the equity powers of this Court to permit that result. Clearly in this case, the underlying equitable rule of "no harm, no foul" embodied in the *Robinson* Case and those which have followed it does not apply. Here harm is clear. The claim of the Veterans' Administration in the Chapter 13 Case should be allowed.

Further, any motion to reopen the Chapter 7 Case (with the anticipated result that the Discharge Order would "spring forward" to erase the subsequently scheduled claim of the Veterans' Administration) should be disallowed if, as and when it is filed, as the only reason for reopening it would be to allow the Debtors to add the Veterans' Administration to its list of creditors. That would either be a futile act (*In re Karamitsos*, supra at 123) or would, at best, allow the Debtors to file a complaint to determine the dischargeability of the debt of the Veterans' Administration under 11 U.S.C. § 523(a)(3). Unfortunately for the Debtors, it is clear from the evidence adduced at the trial of this matter that the Veterans' Administration was neither scheduled nor had actual knowledge of the Chapter 7 Case in time to file a proof of claim (here none was required to be filed) or timely request the determination of dischargeability of its debt. Therefore, based upon the foregoing Findings of Fact the filing of a complaint in the reopened case would also be futile.

The claim of the Veterans' Administration will be allowed in this Chapter 13 Case as filed.

A separate order pursuant to this Memorandum Opinion and the Findings and Conclusions contained herein will be entered by this Court allowing the claim of the Veterans' Administration as an unsecured claim in the Chapter 13 Case in the amount of $5,566.50.