**In re Billy Glynn MUSGRAVES, Debtor.**

**Bankruptcy No. 88–50808–C.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

July 2, 1991.

Joseph W. Shulter, Law Offices of Roger N. Havekost, San Antonio, Tex., for debtor.

Charles E. Brown, Austin, Tex., for creditors.

## MEMORANDUM DECISION

**LEIF M. CLARK, Bankruptcy Judge.**

CAME ON for hearing the motion of Debtor to reopen this bankruptcy case to schedule the claim of Hans and Helga Von Schweinitz. This decision disposes of the matter.

## BACKGROUND FACTS

Debtor, Billy G. Musgraves, assigned a certain real estate lien note in the face amount of $62,000.00, dated January 25, 1985 and executed by certain third parties (the Espinozas) as makers, to creditor (Von Schweinitz) for $45,000.00, in September 1987.[1] Five months later, debtor filed for Chapter 7 bankruptcy relief on February 23, 1988. The debtor failed to list Von Schweinitz as a creditor nor did the debtor disclose his potential recourse liability on the note in his schedules. On June 30, 1988, the debtor received his discharge, without objection by creditors. The case was reported as a no-asset case by the trustee and closed.

On two separate occasions in the spring of 1989, creditor notified debtor that the real estate lien note was in default and demanded payment. The debtor refused and creditor subsequently foreclosed on the underlying property on July 4, 1989. On August 22, 1989, the creditor again demanded payment for the balance of the note. The following day, August 23, 1989, debtor acknowledged that it had known the note was in default as of early 1989, but denied liability on the note. On November 28, 1989 creditor filed suit and prosecuted its claim against debtor for seven months in state court attempting to collect on the note. During this entire seven month period of litigation, the debtor failed to advise the creditor of his bankruptcy discharge or to raise bankruptcy as an affirmative defense.

On June 25, 1990 creditor obtained an interlocutory summary judgment against one of the co-makers on the note (the debtor's father).[2] Creditor then obtained service upon debtor (Billy G. Musgraves) on October 11, 1990. The debtor (Billy G. Musgraves) then filed a motion to reopen the case on December 19, 1990.

---

1. The parties dispute whether the note was assigned with or without recourse, an issue central to the debtor's liability to the creditor.

2. Billy D. Musgraves (the father) represented himself in state court "pro se". He had also previously filed bankruptcy and successfully moved to reopen his case (which is pending before Judge King). Billy D. Musgraves' adversary proceeding to determine dischargeability under Section 523(a)(3) is presently set for trial before Judge King on July 8, 1991.

The creditors assert that the debtor intentionally omitted them from the required schedule of creditors, and as such, prejudiced the creditors by allowing them to incur additional legal expenses in excess of $5,000 during the note collection process. The creditors insist that the loan was signed with recourse and that the debtor knew of this liability at the time he filed for bankruptcy. Furthermore, creditors assert that the debtor's failure to notify them of the bankruptcy proceedings was an intentional act done solely for the purpose of allowing creditors to expend needless time and money in the note collection efforts. Additionally, creditors maintain that the debtor's failures can in no way be deemed an inadvertent act, as debtor suggests. Alternatively, creditors argue under § 523(a)(3) that it would be futile to reopen this case, because the debtor's failure to notify creditors of the bankruptcy excepts this debt from the discharge provisions of the Bankruptcy Code anyway. As such, the issue of dischargeability is properly determined by an adversary proceeding and not governed by whether the debtor is allowed to schedule a previously unscheduled creditor upon reopening of the case.

The debtor responds that the omission of this creditor was inadvertent and justified by the fact that (1) the debtor did not in good faith believe it was liable on this note when he assigned it to the creditors and (2) the debtor did not have effective assistance of counsel. He points out that his father suffered the interlocutory summary judgment after representing himself in state court without a lawyer, and that he himself was not even brought into the case until just last year. He insists that any failure to schedule the claim was not motivated by fraud or ill-will, and that he will be happy to reimburse the creditor for any expenses suffered in trying to collect on the action, in exchange for being able to now list these creditors and render them subject to the bankruptcy discharge.

The parties submitted authorities on the issue.

## ANALYSIS

Section 350(b) permits a court to reopen a bankruptcy case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The Bankruptcy Rule which implements this provision simply says that a case may be reopened on motion of the debtor or other party in interest, and calls for a trustee to be appointed in a reopened chapter 7 or 13 case "unless the court determines that a trustee is not necessary to protect the interests of creditors and the debtor or to insure efficient administration of the case." Bankr.R. 5010.

Though there are dozens of cases construing the appropriate way to apply these rather thin provisions, there is little reason for this court to re-invent the wheel, as at least four courts in Texas have more than adequately addressed the issue. *In re Mitchell*, 47 B.R. 209, 212 (Bankr.N.D.Tex. 1985) (McGuire, B.J.); *In re Parmer*, 98 B.R. 277, 279 (Bankr.N.D.Tex.1989) (Akard, B.J.); *In re Karamitsos*, 88 B.R. 122, 122–23 (Bankr.S.D.Tex.1988) (Mahoney, B.J.); *In re Dye*, 108 B.R. 135, 138 (Bankr. W.D.Tex.1989) (Monroe, B.J.); *see generally, In re Mendiola*, 99 B.R. 864 (Bankr. N.D.Ill.1989); *In re Anderson*, 72 B.R. 495 (Bankr.D.Minn.1987). On review of the Texas decisions, against the backdrop of the well-reasoned *Mendiola* case out of the Northern District of Illinois, this court joins in concluding that motions to re-open solely to schedule a previously unlisted creditor in a no-asset case is an unnecessary exercise in futility which this court will no longer entertain.[3]

---

**3.** Often overlooked in the cases which discuss the relative equities affecting the debtor and the creditor is the sheer administrative burden that re-opening cases places on the court. The clerk of the court must put the case back on to the court's computerized docketing system, a trustee must be appointed, and a "tickler" must be set up to make sure the case is again closed (especially in those cases in which a trustee is *not* appointed, as provided in Bankruptcy Rule 5010). The court must of course handle the paperwork as well, a consideration that in one case is not significant, but which becomes more important against the backdrop of over 6,500 pending cases. If there is no reason under the

The starting point in the analysis, as recognized by the *Karamitsos, Dye,* and *Mendiola* cases, is with the recognition that scheduling or not scheduling a creditor has no impact on whether that creditor's claim is discharged (at least not insofar as the Bankruptcy Code is concerned). 11 U.S.C. § 727(b).[4] That section extends the discharge to all pre-petition debts, a term which itself applies without regard to whether the debt is listed in the debtor's schedules. *See* 11 U.S.C. § 101(12), (5) (definitions of "debt" and "claim"); *see In re Mendiola,* 99 B.R. at 865; *In re Dye,* 108 B.R. at 137; *In re Karamitsos,* 88 B.R. at 122. If the claim of a creditor will be discharged anyway, there is no reason to re-open the case for the ministerial purpose of listing the creditor on the debtor's schedules.[5]

Of course, the creditor may well be able to resist the general discharge by proving that it fits within one of the exceptions to discharge outlined in Section 523(a)(3). That section, briefly, excludes from the debtor's discharge claims held by creditors who, in an asset case, did not learn of the bankruptcy in time to timely file a proof of claim, or in a no-asset case, did not learn of the bankruptcy in time to timely file an objection to discharge based on subsection (2), (4), or (6) (and whose claim would in fact have been exempted from discharge

under one of those subdivisions had a timely objection been filed). 11 U.S.C. § 523(a)(3)(A), (B). This bankruptcy case does not need to be re-opened to entertain that dispute, however, because other courts (including state courts) have concurrent jurisdiction to make that determination. 28 U.S.C. § 1334(b).

■ And state court, it turns out, may well be the best place for that determination to be made, because, in this case as in so many, the creditor has been permitted to spend the last 18 months trying to collect this claim in state court, running up legal fees in excess of $5,000. The underlying pre-petition claim may well be discharged in bankruptcy, but the costs which have been incurred by the creditor *post-discharge* would not have arisen at all had the debtor simply disclosed that he had filed bankruptcy and received a discharge. Those post-discharge costs may well constitute a new and independent claim recoverable from the debtor and not sheltered by the debtor's bankruptcy discharge. The state court in which the litigation has been pending is a thoroughly appropriate forum in which to litigate that issue to judgment. This solution is just as equitable as the one crafted by Judge McGuire in *In re Mitchell,* but takes less of this court's time. *See In re Mitchell,* 47 B.R. at 212.[6]

Code or the rules to entertain such motions, the machinery of the court should not be set into motion simply to make the debtor (or, more likely, the debtor's lawyer) feel better.

**4.** It is an open question whether the discharge could be effective without prior notice on constitutional due process grounds. *Cf. In re Spring Valley Farms Inc.,* 863 F.2d 832, 835 (11th Cir.1989); *In re Duncan,* 125 B.R. 247, 250–52 (Bankr.W.D.Mo.1991). Reopening the case would hardly cure that defect anyway, though, as it would be too late to object to the debtor's discharge or otherwise meaningfully participate in the administration of the case. *See* Bankr.R. 4004(a) (deadline for objections to discharge), 2003 (notice regarding first meeting of creditors). Presumably, the *due process* argument would have to be raised as a counter to attempts by the debtor to raise discharge in bankruptcy as a plea in bar in the nonbankruptcy court action.

**5.** This does not render Section 350(b) and Rule 5010 empty nullities. The option to reopen is

available to creditors and trustees, to administer previously undisclosed assets, or perhaps to pursue revocation of the debtor's discharge under Section 727(e). Also, a debtor may wish to reopen a case for a variety of other reasons, such as to institute lien avoidance actions under Section 522(f) or (g), or to clarify whether a given asset has or has not been abandoned, or the like. Too, some courts may well be willing to re-open solely to entertain an adversary proceeding to determine nondischargeability (as Judge King has done in the companion case involving this debtor's father). This court, however, sees no reason why the Section 523(a)(3) issue cannot be litigated as part of the state court's passing on the debtor's plea in bar.

**6.** This simple solution also deals with the thorny problem of prejudice to the creditor left unsolved by cases which attempted to balance that prejudice against the debtor's fresh start. *See In re Stark,* 717 F.2d 322 (7th Cir.1983); *In re Rosinski,* 759 F.2d 539 (6th Cir.1985); *see Robinson v. Mann,* 339 F.2d 547 (5th Cir.1964) (decid-

Accordingly, an order will be entered denying the motion to re-open and directing the clerk of the court to dismiss all pending matters (including the currently pending adversary proceeding filed by the debtor to determine dischargeability pursuant to Section 523(a)(3)).

So ORDERED.

ed under the Bankruptcy Act). These cases erroneously assumed that, unless the case were re-opened as the debtor requested, the creditor's claim would not be discharged. *See In re Padilla,* 84 B.R. 194, 196 (Bankr.D.Colo.1987); *In re*

*Mendiola,* 99 B.R. at 865. Because their premise was faulty, they never reached the issue of what to do about the prejudicial costs incurred by the creditor post-discharge whose pre-petition claim had in fact been discharged.