**In re Jacob & Guadalupe GUZMAN, Debtors.**

**Bankruptcy No. 89–52546–C.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

July 24, 1991.

John A. Ruttan, Law Office of Robert C.E. Wolfe, San Antonio, Tex., for debtors.

## DECISION AND ORDER

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the motion of Debtor to reopen this bankruptcy case to schedule the claims of Spiegel's and Citicorp.

Debtor filed bankruptcy on August 17, 1989, and was discharged on December 14, 1989. The case was closed January 18, 1990.

The debtors say that they learned in April 1990 of debts owed to Spiegel's and Citicorp. Neither creditor was listed in the debtors' schedules, nor presumably were they notified of the bankruptcy. The debtors urge that the omission of these creditors was inadvertent.

## ANALYSIS

Section 350(b) permits a court to reopen a bankruptcy case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The Bankruptcy Rule which implements this provision simply says that a case may be reopened on motion of the debtor or other party in interest, and calls for a trustee to be appointed in a reopened chapter 7 or 13 case "unless the court determines that a trustee is not necessary to protect the interests of creditors and the debtor or to insure efficient administration of the case." Bankr.R. 5010.

█ Though there are dozens of cases construing the appropriate way to apply these rather thin provisions, there is little reason for this court to re-invent the wheel, as at least four courts in Texas have more than adequately addressed the issue. *In re Mitchell,* 47 B.R. 209, 212 (Bankr.N.D.Tex. 1985) (McGuire, B.J.); *In re Parmer,* 98 B.R. 277, 279 (Bankr.N.D.Tex.1989) (Akard, B.J.); *In re Karamitsos,* 88 B.R. 122, 122–23 (Bankr.S.D.Tex.1988) (Mahoney, B.J.); *In re Dye,* 108 B.R. 135, 138 (Bankr. W.D.Tex.1989) (Monroe, B.J.); *see generally, In re Mendiola,* 99 B.R. 864 (Bankr. N.D.Ill.1989); *In re Anderson,* 72 B.R. 495 (Bankr.D.Minn.1987). On review of the Texas decisions, against the backdrop of the well-reasoned *Mendiola* case out of the Northern District of Illinois, this court joins in concluding that motions to re-open solely to schedule a previously unlisted creditor in a no-asset case is an unnecessary exercise in futility which this court will no longer entertain. *See In re Musgraves,* 129 B.R. 119 (Bankr.W.D.Tex.1991) (Clark, B.J.).[1]

█ The starting point in the analysis, as recognized by the *Karamitsos, Dye,* and *Mendiola* cases, is with the recognition that scheduling or not scheduling a creditor

---

1. Often overlooked in the cases which discuss the relative equities affecting the debtor and the creditor is the sheer administrative burden that re-opening cases places on the court. The clerk of the court must put the case back on to the court's computerized docketing system, a trustee must be appointed, and a "tickler" must be set up to make sure the case is again closed (especially in those cases in which a trustee is *not* appointed, as provided in Bankruptcy Rule 5010). The court must of course handle the paperwork as well, a consideration that in one case is not significant, but which becomes more important against the backdrop of over 6,500 pending cases. If there is no reason under the Code or the rules to entertain such motions, the machinery of the court should not be set into motion simply to make the debtor (or, more likely, the debtor's lawyer) feel better.

has no impact on whether that creditor's claim is discharged (at least not insofar as the Bankruptcy Code is concerned). 11 U.S.C. § 727(b).[2] That section extends the discharge to all pre-petition debts, a term which itself applies without regard to whether the debt is listed in the debtor's schedules. *See* 11 U.S.C. § 101(12), (5) (definitions of "debt" and "claim"); *see In re Mendiola,* 99 B.R. at 865; *In re Dye,* 108 B.R. at 137; *In re Karamitsos,* 88 B.R. at 122. If the claim of a creditor will be discharged anyway, there is no reason to re-open the case for the ministerial purpose of listing the creditor on the debtor's schedules.[3]

Of course, the creditor may well be able to resist the general discharge by proving that it fits within one of the exceptions to discharge outlined in Section 523(a)(3). That section, briefly, excludes from the debtor's discharge claims held by creditors who, in an asset case, did not learn of the bankruptcy in time to timely file a proof of claim, or in a no-asset case, did not learn of the bankruptcy in time to timely file an objection to discharge based on subsection (2), (4), or (6) (and whose claim would in fact have been exempted from discharge under one of those subdivisions had a timely objection been filed). 11 U.S.C. § 523(a)(3)(A), (B). This bankruptcy case does not need to be re-opened to entertain such a dispute, however, because other courts (including state courts) have concurrent jurisdiction to make that determination. 28 U.S.C. § 1334(b).

And state court, it turns out, may well be the best place for that determination to be made. The underlying pre-petition claim may well be discharged in bankruptcy, but any costs which have been incurred by the creditors *post-discharge* would not have arisen at all had the debtors timely advised the creditors of the pendency of the bankruptcy. Those post-discharge costs may well constitute a new and independent claim recoverable from the debtor and may not be sheltered by the debtors' bankruptcy discharge. Any state court in which any litigation may be brought to enforce the creditors' claims is a thoroughly appropriate forum in which to litigate all issues to judgment, including whether the claim has been discharged in bankruptcy and whether any costs incurred post-discharge are sufficiently independent to be found to have arisen post-discharge. This solution is just as equitable as the one crafted by Judge McGuire in *In re Mitchell,* but takes less of this court's time. *See In re Mitchell,* 47 B.R. at 212.[4]

---

**2.** It is an open question whether the discharge could be effective without prior notice on constitutional due process grounds. *Cf. In re Spring Valley Farms Inc.,* 863 F.2d 832, 835 (11th Cir.1989); *In re Duncan,* 125 B.R. 247, 250–52 (Bankr.W.D.Mo.1991). Reopening the case would hardly cure that defect anyway, though, as it would be too late to object to the debtor's discharge or otherwise meaningfully participate in the administration of the case. *See* Bankr.R. 4004(a) (deadline for objections to discharge), 2003 (notice regarding first meeting of creditors). Presumably, the due process argument would have to be raised as a counter to attempts by the debtor to raise discharge in bankruptcy as a plea in bar in the nonbankruptcy court action.

**3.** This does not render Section 350(b) and Rule 5010 empty nullities. The option to reopen is available to creditors and trustees, to administer previously undisclosed assets, or perhaps to pursue revocation of the debtor's discharge under Section 727(e). Also, a debtor may wish to re-open a case for a variety of other reasons, such as to institute lien avoidance actions under Section 522(f) or (g), or to clarify whether a given asset has or has not been abandoned, or the like. Too, some courts may well be willing to re-open solely to entertain an adversary proceeding to determine nondischargeability.

**4.** This simple solution also deals with the thorny problem of prejudice to the creditor left unsolved by cases which attempted to balance that prejudice against the debtor's fresh start. *See In re Stark,* 717 F.2d 322 (7th Cir.1983); *In re Rosinski,* 759 F.2d 539 (6th Cir.1985); *see Robinson v. Mann,* 339 F.2d 547 (5th Cir.1964) (decided under the Bankruptcy Act). These cases erroneously assumed that, unless the case were reopened as the debtor requested, the creditor's claim would not be discharged. *See In re Padilla,* 84 B.R. 194, 196 (Bankr.D.Colo.1987); *In re Mendiola,* 99 B.R. at 865. Because their premise was faulty, they never reached the issue of what to do about the prejudicial costs incurred by the creditor post-discharge whose pre-petition claim had in fact been discharged.

Accordingly, the motion to re-open is denied.[5]

So ORDERED.

---

5. The court notes in passing that the motion to re-open was not filed until July 1991, more than a year after these claims were discovered. The doctrine of laches would bar reopening the case so long after the discovery of the existence of the claims, even were the court to follow *Stark* and its progeny. *See In re Stark,* 717 F.2d 322 (7th Cir.1983); *In re Rosinski,* 759 F.2d 539 (6th Cir.1985).