**In re Catherine Elizabeth
TYLER, Debtor.**

**Alvin L. KEEVER, Plaintiff/Appellant,**

v.

**Catherine Elizabeth TYLER,
Defendant/Appellee.**

**No. 90–K–1337.
Bankruptcy No. 89 B 04051 J.
Adv. No. 89 J 0769.**

United States District Court,
D. Colorado.

April 30, 1992.

---

Richard E. Hartman and Joseph B. Hartman, Hartman & Assoc., Englewood, Colo., for plaintiff/appellant.

Robert I. Cohen, Denver, Colo., for defendant/appellee.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

This case is before the court on appeal from a ruling of the bankruptcy court dismissing appellant's complaint objecting to discharge. The court below dismissed the complaint under the rationale of *In re Padilla,* 84 B.R. 194 (Bankr.D.Colo.1987). *Padilla* held that in a no-asset case even non-scheduled debts are discharged, unless the creditor can show fraud, malicious injury or the like under 11 U.S.C. § 523(a)(2),

(4), or (6). In this appeal appellant argues that the bankruptcy court was estopped to dismiss the complaint by virtue of an earlier decision in another related bankruptcy case and that the debtor waived discharge of the debt by failing to schedule it. I affirm the bankruptcy court's order.

### I. *Facts*

On May 16, 1980 Catherine Tyler ("debtor") filed a chapter 7 bankruptcy petition, case number 80B1953M. She did not list a debt owed to appellant Keever, then her father-in-law, ("debtor" or "Keever") in an approximate amount of $20,000. On July 29, 1980, the court granted debtor a discharge, determining that the case was a "no-asset" chapter 7 case. Debtor separated from her husband on August 2, 1983. In a separation agreement of that date, debtor and her husband agreed to halve the debt to Keever, each assuming responsibility for approximately $10,165.30.[1] Keever obtained a default judgment against debtor on December 19, 1988 in an amount of $10,752.95. On the same date, debtor moved to reopen her 1980 chapter 7 case for the limited purpose of scheduling the debt to Keever. Keever objected. The bankruptcy court, Brooks, J., denied the motion to reopen on January 25, 1989. Debtor did not appeal that order.

Rather, on March 30, 1989, debtor filed another chapter 7 petition in bankruptcy where she listed the Keevers as creditors. She received a discharge on July 24, 1989. Creditor filed a complaint objecting to discharge of the debt on July 10, 1989. The complaint alleged exemption pursuant to 11 U.S.C. § 523(a)(10), which excepts from discharge any debt which "was or could have been listed or scheduled by the debtor in a prior case concerning the debtor under this title or under the Bankruptcy Act in which the debtor waived discharge...." Debtor filed an answer on May 18, 1990 and a motion to dismiss on May 23, 1990, predicated, in part, upon an alleged lack of jurisdiction. The court heard argument on June 27, 1990. Judge Brumbaugh filed a writ-

---

1. The separation agreement was never entered into evidence as an exhibit in the bankruptcy proceeding. It is part of the court file in this case because debtor sought, unsuccessfully, to supplement the record with it.

ten order of dismissal on June 29, 1990. He concluded that "the debt owing to Plaintiff was discharged in the 1980 proceeding, notwithstanding that Defendant failed to list the debt on her schedules." The court refused to find that the debtor had waived discharge of the debt absent either a written waiver or reaffirmation pursuant to 11 U.S.C. § 727(a)(10) or 11 U.S.C. 524(c). Finding neither of those events was pled in the complaint, it granted the motion to dismiss, but gave debtor an opportunity to seek reconsideration.

This appeal followed. While the parties were briefing the appeal, creditor moved, on October 4, 1990, to supplement the record by including the 1983 separation agreement and affidavit with respect to financial affairs from the debtor's dissolution from Keever's son. Creditor sought to use the documents to prove and argue "constructive waiver or reaffirmation." The district court, Carrigan, J., denied the motion to supplement on November 8, 1990.

## II. *Discussion*

The creditor claims I must decide (1) whether Judge Brumbaugh "had the authority to overrule [Judge Brooks'] ... denial of discharge?", that is whether Judge Brooks' order refusing to reopen collaterally estopped Judge Brumbaugh from dismissing the adversary proceeding; (2) Whether Judge Brooks had discretion to deny reopening of the debtor's petition? and (3) whether debtor reaffirmed her debt to Keever after the 1980 bankruptcy?

The second issue is not properly before this court on appeal. Judge Brooks' order denying debtor's petition to reopen was entered in case number 80B1953M, not in 89B4051J. Only the latter case is before me.

The third issue is properly before the court only to the extent that I might wish to reconsider, sua sponte, Judge Carrigan's order denying the creditor leave to supplement the record with the 1983 separation agreement. I decline to do so. I note, however, that Judge Brumbaugh implicitly rejected such an argument by treating the complaint as one arising under § 523(a)(3)

("neither listed or scheduled") instead of under § 523(a)(10) (a debt which was or could have been listed or scheduled in an earlier case in which the debtor waived discharge) as actually pled in the complaint.

### A. Collateral Estoppel

■ The debtor argues that Judge Brumbaugh could not dismiss his complaint because of Judge Brooks' 1988 order denying debtor's motion to reopen the 1980 chapter 7 proceeding. I disagree that there is any preclusive effect from the first ruling to the second. Issue preclusion requires at a minimum that the issues in the two cases be identical. Here, they are not. In the first, Judge Brooks ruled, as a matter of discretion, that debtor could not reopen the 1980 chapter 7 petition in order to schedule the disputed debt. In the second, Judge Brumbaugh dismissed the adversary complaint because as a matter of law the debt owed the creditor was discharged in the 1980 proceeding, notwithstanding debtor's failure to schedule the debt. Dischargeability of the Keever debt was never before Judge Brooks. Since it was not, there can be no preclusive effect to his ruling.

### B. Padilla and the Failure to Schedule

■ In *In re Padilla*, 84 B.R. 194 (Bankr.D.Colo.1987), the debtors moved to reopen a chapter 7 case approximately ten months after receiving a discharge and eight months after the court closed the case as one without assets. The *Padilla* debtors sought to amend their schedule A–3 by adding two unsecured creditors. The unsecured creditors objected pursuant to § 523(a)(3). They claimed they had not been listed or scheduled in time to permit them to file a proof of claim and/or a timely request for a determination of dischargeability. The court held that since it was "a 'no-asset' Chapter 7 case, the time for filing a claim has not, and never will, expire unless some non-exempt assets are discovered." 84 B.R. at 195–96. Thus, § 523(a)(3)(A) did not prevent discharge of the debts even if not listed or scheduled. The only exception under *Padilla* is for an unlisted or unscheduled creditor whose

claim arises under § 523(a)(2), (4), or (6). In such a situation, the court may reopen a closed case for the limited purpose of giving the unscheduled creditors an opportunity to file a complaint to determine if their claims arise under § 523(a)(2), (4), or (6). The rationale behind *Padilla* and its progeny is sound and I approve it.

As noted above, the complaint objecting to discharge alleged exemption from discharge under § 523(a)(10). It did not affirmatively plead, however, a written waiver or reaffirmation of the type § 524(c) describes (i.e. made in writing, before the granting of discharge, with appropriate admonitions, and filed with the court). Hence, the court below, *sub silentio* at least, treated the complaint as one arising § 523(a)(3) and applied *Padilla* to dismiss the complaint. In this, I see no error, especially since the court gave debtor an opportunity to file for reconsideration.

### C. Post–Petition Prejudice

Although not clearly articulated, creditor's largest concern seems to be that *Padilla* unfairly allows the debtor to get off scot-free in the face of its own (unspecified) costs incurred in post-petition collection efforts. Even among those courts that have adopted, followed and developed *Padilla*'s approach, there is no uniform response. *See In re Mendiola,* 99 B.R. 864 (Bankr. N.D.Ill.1989); *In re David,* 106 B.R. 126 (Bankr.E.D.Mich.1989); and *In re Guzman,* 130 B.R. 489 (Bankr.W.D.Tex.1991). One court has suggested that "[t]his type of prejudice can easily be rectified by conditioning the granting of the motion [to reopen] upon the reimbursement of such [costs] to the creditor." *David,* 106 B.R. at 130. Another has suggested that the state courts should be allowed to consider such a claim of post-petition prejudice. They could thus balance post-petition prejudice to the creditor against the debtor's fresh start. *Guzman,* 130 B.R. at 491 n. 4. Although the underlying pre-petition claim may well have been discharged, the creditor's post-petition costs would not have been incurred at all had the debtor "timely advised the creditors of the pendency of the bankruptcy." 130 B.R. at 491. The state court is an appropriate forum in which to determine whether the post-discharge costs are "a new and independent claim recoverable from the debtor [which] may not be sheltered by the debtor's bankruptcy discharge." *Id.* Although either approach seems fair enough, the precise issue is not before me in this appeal. The creditor may wish to pursue this further in the forum of his choice.

IT IS ORDERED that the decision of the bankruptcy court is affirmed.