In re John L. McKINNON, Debtor.

Bankruptcy No. 93–10432.

United States Bankruptcy Court,
D. Maine.

March 24, 1994.

James R. Wholly, Gross, Minsky, Mogul & Singal, Bangor, ME, for debtor.

Ray R. Pallas, Westbrook, ME, for Government Employees Federal Credit Union.

## Memorandum of Decision

JAMES B. HAINES, Jr., Bankruptcy Judge.

John McKinnon ("McKinnon" or the "debtor") has moved to reopen his no-asset Chapter 7 case in order to amend his schedules to add the Government Employees Federal Credit Union ("GEFCU") as a creditor. For the reasons set forth below, I conclude that the case shall be reopened so that the amendment may be effected, notwithstanding the fact that the amendment is not determinative of whether GEFCU's claim is discharged.[1]

### Procedural History

McKinnon filed for relief under Chapter 7 on June 24, 1993. The clerk issued a notice of commencement of the case the same day. In addition to setting the date of the § 341[2] meeting of creditors and the bar date for filing objections to discharge and complaints to determine the dischargeability of claims, the notice included the following statement:

AT THIS TIME THERE APPEAR TO BE NO ASSETS AVAILABLE FROM WHICH PAYMENT MAY BE MADE TO UNSECURED CREDITORS. DO NOT FILE A PROOF OF CLAIM UNTIL YOU RECEIVE NOTICE TO DO SO.[3]

The trustee filed a final report of "no

---

1. The facts are not in dispute. This memorandum sets forth conclusions of law in accordance with Fed.R.Bankr.P. 9014 and 7052.

I elaborate on disposition of the motion because the motion expresses an expectation that my ruling will determine whether the debt in question is discharged. That is not the case. I also write to explicate the reasons for my conclusion that the motion sets forth grounds for reopening the case to "accord relief to the debtor" in accordance with the Code's requirements.

2. Unless otherwise noted, all references to statutory sections are to the Bankruptcy Reform Act

of 1978, as amended, codified at 11 U.S.C. § 101 et. seq., ("Bankruptcy Code" or "Code").

3. Fed.R.Bankr.P. 2002(e) provides as follows:

Notice of No Dividend. In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.

distribution" on August 18, 1993.[4]  McKinnon received his discharge on October 14, 1993, and on December 29, 1993, the case was closed.

On February 22, 1994, McKinnon moved to reopen his case to add GEFCU's claim to his schedules.  The motion asserted that, after the case closed, GEFCU initiated a collection action against him.  McKinnon did not set his motion for hearing, but, pursuant to local rules, the clerk held it to see if any party in interest objected to it.[5]  No objections were filed.

*Discussion*

■  The authorities are split on the question whether a bankruptcy court should permit a Chapter 7 debtor to reopen his or her no-asset case to add an omitted, prepetition creditor.[6]

One line of cases holds that a court may reopen a closed case to permit a debtor to amend his or her schedules by adding a previously omitted creditor.  They hold that "a debtor may reopen the estate to add an omitted creditor where there is no evidence of fraud or intentional design." *In re Stark,* 717 F.2d 322, 324 (7th Cir.1983).  *See also In re Rosinski,* 759 F.2d 539, 541–42 (6th Cir. 1985); *In re Zablocki,* 36 B.R. 779 (Bankr. D.Conn.1984).  Such cases consider that since, in a no-asset case late added creditors have lost no opportunity to receive a distribution by their tardy addition to the schedules, no prejudice results from the amendment. *In re Stark,* 717 F.2d at 324; *In re Rosinski,* 759 F.2d at 542; *In re Zablocki,* 36 B.R. at 782.  *See also 2 Collier on Bankruptcy,* ¶ 350.03, at 350–8 (15th ed. 1993).

A second line of cases concludes that the bankruptcy court need not, or should not, grant such motions to reopen.  They consid-

er that a motion seeking to reopen a closed, no-asset, Chapter 7 case in which no proof of claim bar date has been set in order to add a creditor to the schedules is a "meaningless" exercise.  *In re Thibodeau,* 136 B.R. 7, 10 (Bankr.D.Mass.1992) (citing *In re Karamitsos,* 88 B.R. 122, 123 (Bankr.S.D.Texas 1988) (refusing to grant "meaningless reopening"). *See also, e.g., In re Beezley,* 994 F.2d at 1434 ("pointless exercise"); *In re Tyler,* 139 B.R. 733, 735 (D.Colo.1992); *American Standard v. Bakehorn,* 147 B.R. 480, 483 (Bankr. N.D.Ind.1992); *In re Stecklow,* 144 B.R. 314, 317 (Bankr.D.Md.1992); *In re Tucker,* 143 B.R. 330, 334 (Bankr.W.D.N.Y.1992); *In re Peacock,* 139 B.R. 421, 426 (Bankr.N.D.Ill. 1989); *In re Hunter,* 116 B.R. 3, 5 (Bankr. D.D.C.1990); *In re Crull,* 101 B.R. 60, 62 (Bankr.W.D.Ark.1989); *In re Mendiola,* 99 B.R. 864, 865 (Bankr.N.D.Ill.1989); *In re Anderson,* 72 B.R. 495, 497 (Bankr.D.Minn. 1987).  The latter authorities criticize those cases that permit reopening and amendment for basing their holdings on the erroneous premise that in no-asset, no-bar-date Chapter 7 cases, the scope of the discharge is limited by the schedule of claims.  *In re Thibodeau,* 136 B.R. at 10.  *See also In re Anderson,* 72 B.R. at 496 (scope of discharge is unaffected by post-discharge amendments to schedules).

■  I agree that, in a no-asset Chapter 7 in which the clerk has issued the "no need to file" notice regarding proofs of claim, whether a claim is or is not scheduled is not itself determinative of whether the claim is discharged.  The foundation for that conclusion is carefully explicated in Judge O'Scannlain's concurring opinion in *In re Beezley,* 994 F.2d at 1434–41.  *See also In re Mendiola,* 99 B.R. at 865–70.  I agree with it; I can't improve on it.[7]

---

**4.**  *See* Fed.R.Bankr.P. 5009.

**5.**  *See* Me.Bankr.R. 9013 (if no objection is filed within seven days, court may act on a motion with or without a hearing).

**6.**  Today's discussion addresses only the instance in which the clerk issued a "no-asset" notice, thereby relieving creditors of the obligation to file proofs of claim by a date certain.  Cases, even no-asset cases, in which a bar date has been established may be governed by different princi-

ples.  *See In re Beezley,* 994 F.2d 1433, 1440 n. 5 (9th Cir.1993) (O'Scannlain, J., concurring).

**7.**  The long and short of it is this: Section 727 provides for the discharge of prepetition obligations (scheduled or not), and references the exceptions to discharge listed in § 523(a). Among § 523(a)'s exceptions, only § 523(a)(3) addresses the relation of scheduling to discharge. Section § 523(a)(3)(A), which addresses debts other than those specified in § 523(a)(2) (fraud), (4) (fiduciary defalcation), and (6) (willful and

But I part company with cases such as *Thibodeau* and *Mendiola* in their conclusion that, because amendment of the schedules is not necessary to, or immediately determinative of, the dischargeability of an added prepetition obligation, the case should not be reopened to permit the amendment. For the most part, such cases unfairly discount or ignore altogether the consequences that can result when a case is later reopened to administer previously undiscovered assets.

Rule 2002(e) anticipates that, once a no-asset notice issues, "should sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims."[8] Rule 3002(c)(5) governs that "further notice" in the following terms:

> If notice of insufficient assets to pay a dividend was given to the creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of the notice.

If a debtor is not permitted to reopen a no-asset Chapter 7 case to add creditors to his schedules by amendment, those creditors will

---

malicious injury), excepts from discharge debts that are not scheduled in time to permit the timely filing of a proof of claim (unless the creditor had notice of actual knowledge of the case). In a no-asset Chapter 7 case in which the Rule 2002(e) notice has issued, no time limit for filing proofs of claim is ever established. Thus, late scheduling of the debt does not prevent timely filing of a proof of claim and, accordingly, the debt is not excepted from discharge under § 523(a)(3)(A).

If the debt is of a kind specified in § 523(a)(2), (4) or (6), § 523(a)(3)(B) controls. If the debt is not scheduled in time for the creditor to file a timely action to determine dischargeability, *see* § 523(c)(1) and Fed.R.Bankr.P. 4007, and to file a timely proof of claim, the debt is not discharged. The creditor must, in any event, demonstrate that the debt comes within a § 523(a)(2), (4) or (6) exception, *In re Brassard,* 162 B.R. 375 (Bankr.D.Me.1994), but may do so free of the time or jurisdictional limits set by § 523(c)(1). *See In re Beezley,* 994 F.2d at 1441 (O'Scannlain, J., concurring); *American Standard v. Bakehorn,* 147 B.R. at 484; *In re Thibodeau,* 136 B.R. at 10.

Thus, adding the creditor to the schedules will not, in and of itself, immediately affect dischargeability.

---

not receive the Rule 3002(c)(5) notice when it issues. If they do not receive the notice, do not file a proof of claim, and do not otherwise come by "notice or actual knowledge" of the case in time to file a proof of claim within the designated period, their claims will not be discharged. 11 U.S.C. § 523(a)(3)(A) and (B).

To say that instances of uncovering previously unadministered assets in a formerly no-asset case Chapter 7 case are "rare" and, therefore, that the debtor should not be permitted to burden the court with reopening and amendment merely to buy "peace of mind," *In re Thibodeau,* 136 B.R. at 8 n. 2, is unsatisfactory. Debtors are entitled to a fresh start, free from the economic and emotional burden of prepetition debt. *Local Loan v. Hunt,* 292 U.S. 234, 243, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).[9] They should be permitted to reopen Chapter 7 cases to amend schedules by adding claims (and thereby to fulfill more perfectly their obligations under § 521(1) and Fed.R.Bankr.P. 1007) to assure the comprehensiveness of the Chapter 7 discharge. Permitting them to do so under such circumstances causes no harm to the creditors involved but provides meaningful relief to the debtor.

> The cases finding reopening and amendment to be appropriate because scheduling determines the breadth of the Chapter 7 discharge generally require that there be "no evidence of fraud or intentional design." *In re Stark,* 717 F.2d at 324. Judge O'Scannlain's concurrence thoughtfully reveals the mistaken underpinning of that qualification, as well. *In re Beezley,* 994 F.2d at 1439 at n. 3.

**8.** *See supra* n. 3.

**9.** "One of the primary purposes of the bankruptcy act is to 'relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.' *Williams v. U.S. Fidelity & G. Co.,* 236 U.S. 549, 554–555 [35 S.Ct. 289, 290, 59 L.Ed. 713]. This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan v. Hunt,* 292 U.S. at 244, 54 S.Ct. at 699.

To say that the debtor's interests are meaningfully served by permitting additions to the schedules of liabilities only if and when the case is reopened to administer assets, *In re Thibodeau*, 136 B.R. at 9, ignores practical considerations pertinent to not only Chapter 7 debtors, but to case administration as well. It is unrealistic (and unfair) to require debtors (and their counsel) to defer acting to amend the schedules unless and until a case is reopened to administer of newly-discovered assets. They are entitled to do what they can to ensure a comprehensive discharge, get the case behind them, and get on with their lives. Moreover, permitting amendments to add creditors only after a Rule 3002(c)(5) notice issues disrupts operation of the rule's uniform bar date. Creditors who are on the schedules (originally listed or added by amendment) when the notice issues are provided ninety days within which to file proofs of claim. Would the same bar date apply without exception to those creditors added to the schedules *after* the Rule 3002(c)(5) notice is dispatched? [10]

Section 350(b) provides that a bankruptcy case may be reopened "to administer assets, to accord relief to the debtor, or for other cause." Although amending the schedules to add a prepetition creditor or creditors is not immediately determinative of whether the claim is discharged, it does provide important relief to Chapter 7 debtors who wish to ensure that their discharge is, and will remain, as comprehensive as possible. Moreover, permitting amendment ensures uniform operation of rules that provide for noticing creditors of the right to file claims if and when a dividend becomes possible. Thus, a case should be reopened to permit such amendments.

### Conclusion

For the reasons set forth above, the debtor's motion to reopen his case in order to amend the schedules by adding a previously omitted creditor will be granted. A separate order will enter forthwith.

---

**10.** Rule 3002(c)(5) assumes that all creditors who should get the notice are already listed on the schedules. It contains no express provision for extending the ninety day period it establishes. *Cf.* Fed.R.Bankr.P. 3002(c)(1), (2), (3) and (4) (providing for extension of the proof of claim bar date in specific instances). A number of prickly issues quickly emerge: *e.g.,* whether the 3002(c)(5) bar date (or some other bar date) applies to subsequently added creditors; how long after the notice issues the debtor may delay in amending schedules; and how and when "excusable neglect" will operate to excuse late-filed proofs of claim. *E.g., Pioneer Investment Cl. v. Brunswick Associates Limited Partnership,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Such issues do not arise if the schedules are complete before the clerk mails a Rule 3002(c)(5) notice.