**In re Sidney DAWSON, d/b/a Afri–American Supply Company, Inc., Debtor.**

**Sidney DAWSON, d/b/a Afri–American Supply Company, Inc., Plaintiff–Appellant,**

**v.**

**Kenneth L. UNRUH and Astro World Travel, Inc., Defendants–Appellees.**

**BAP No. NO–96–044.
Bankruptcy No. 87–02320.
Adv. No. 97–00194.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

June 19, 1997.

Wilma L. Palmer, Waldo E. Jones, II & Associates, Tulsa, OK, for Plaintiff–Appellant.

Scott W. Bradshaw, Tulsa, OK, for Defendants–Appellees.

Before PUSATERI, BOULDEN, and ROBINSON, Bankruptcy Judges.

## OPINION

ROBINSON, Bankruptcy Judge.

Sidney Dawson, doing business as Afri–American Supply Company, Inc. ("Dawson"), appeals the judgment of the United States Bankruptcy Court for the Northern District of Oklahoma finding that any debt which Dawson may owe to Kenneth L. Unruh ("Unruh") on an alleged guaranty is excepted from discharge under 11 U.S.C. § 523(a)(3)(A). We affirm the Bankruptcy Court's judgment.[1]

Neither party disputes the Bankruptcy Court's findings of fact. Therefore, this

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R.Bankr.P. 8012; 10th Cir. BAP L.R. 8012–1(a). The case is therefore submitted without oral argument.

Court must review the Bankruptcy Court's conclusions of law. The Bankruptcy Court's legal determinations are subject to *de novo* review. *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988).

## FACTS

Dawson is one of the debtors in the above-styled bankruptcy case. Defendant Unruh is a creditor holding a disputed unsecured claim against Dawson in the amount of $6,474.68. Unruh was principal of a business named Astro World Travel, Inc. ("AWT"). AWT is an Oklahoma corporation and is the assignor of the debt claimed by Unruh.

On August 25, 1987, Dawson filed a voluntary petition under Chapter 13 of the Bankruptcy Code. On November 10, 1987, Dawson voluntarily converted his case to Chapter 7. Notice of the meeting of creditors in the Chapter 7 case was mailed to all creditors on November 18, 1987. The notice did not contain a "notice of no dividend" pursuant to Fed. R. Bank. P.2002(e). The meeting of creditors was held and concluded on December 17, 1987. On December 18, 1987, the Chapter 7 Trustee filed his "Report of No Distribution" indicating that no assets were available for liquidation and distribution to creditors. Sixty days after the meeting of creditors, i.e. on or about February 15, 1988, the deadline for filing complaints under 11 U.S.C. §§ 523(c) and 727(a) expired. No such complaints were filed. Ninety days after the meeting of creditors, i.e. on or about March 17, 1988, the deadline for filing proofs of claim under Fed.R.Bankr.P. 3002(c) expired. The Bankruptcy Court entered an Order of Discharge in Dawson's bankruptcy case on April 5, 1988, and the case was closed on June 22, 1989. Neither Unruh nor AWT were listed as creditors in the bankruptcy case and neither had notice or actual knowledge of the case at any time before it was closed.

Unruh filed a lawsuit against Dawson on May 18, 1990, in the District Court of Tulsa County, Oklahoma, Case No. CS 90–2081. Unruh alleged that Dawson was liable on a personal guaranty in favor of AWT, purportedly executed by Dawson on May 23, 1985, for an unpaid account in the amount of $6,474.68 owed to AWT by Dawson's corporation, Afri–American Supply, Inc. AWT assigned the unpaid account to Unruh.

In May 1993, Dawson filed a motion to reopen his bankruptcy case and the Bankruptcy Court granted the motion on June 1, 1993. Thereafter, Dawson amended the mailing matrix and the *Schedule of Creditors Holding Unsecured Claims Without Priority* by adding the debt claimed by Unruh, and gave notice of the amendment to Unruh and AWT. In addition, Dawson filed this adversary proceeding against Unruh and AWT for the purpose of, among other things, determining the dischargeability of the debt claimed by Unruh. In his second amended complaint, Dawson denied that his signature is on the guaranty, and alleged that said signature is a forgery.

The Bankruptcy Court, pursuant to its November 7, 1996 Memorandum Opinion and Order, held that any debt that Dawson may owe to Unruh on the alleged guaranty is excepted from discharge under 11 U.S.C. § 523(a)(3)(A). For purposes of its decision regarding dischargeability, the Bankruptcy Court assumed that the guaranty was genuine and that Dawson owed Unruh a debt enforceable under State law. The Bankruptcy Court noted that there remains a question as to whether there is any such debt, i.e. whether the guaranty is genuine or forged.

On December 6, 1996, the Bankruptcy Court entered an Order of Abstention, abstaining from deciding the question as to whether there is or is not a debt owed by Dawson to Unruh, and ordering the Clerk of the Court to close the adversary proceeding. The Bankruptcy Court ordered the parties to go forward with the state court action to determine whether there was an indebtedness and, if so, its amount.

## DISCUSSION

▮ As a preliminary matter, we find that this appeal is properly before us even though the Bankruptcy Court's decision did not rule on all of Dawson's claims for relief. Rule 7054 of the Federal Rules of Bankruptcy Procedure incorporates Rule 54(b) of the

Federal Rules of Civil Procedure, and provides that absent an express determination that there is no just reason for delay and an express direction for the entry of judgment, an order is not final if it adjudicates fewer than all the claims for relief. In this case, the Bankruptcy Court did not determine whether there is a debt owed by Dawson to Unruh. However, *Lewis v. B.F. Goodrich Co.*, 850 F.2d 641 (10th Cir.1988) (en banc), provides an exception to the finality rule by allowing a premature notice of appeal filed from an order disposing of less than all of the claims in a case to ripen upon the entry of a subsequent final judgment, provided that the appellate court has not yet dismissed the appeal. In the present case, the Order of Abstention served as a subsequent final judgment, similar to the "administrative closing order" which by its own terms matured into a dismissal of the unadjudicated counterclaim in *Lewis*. *See Lewis*, 850 F.2d at 642–43. However, although the notice of appeal ripens upon entry of a final order, the notice of appeal can only apply to the previous non-final order, and cannot be considered a notice of appeal from the order rendering the non-final order final. *See Nolan v. United States Dep't Of Justice*, 973 F.2d 843, 846 (10th Cir.1992). In this case, the appeal from the Bankruptcy Court's dischargeability decision falls within the exception recognized in *Lewis*, and is properly before this Court.

Unless an exception set forth in § 523 applies, a debtor receives a discharge from all debts that arose before the date of the order for relief under Chapter 7, and from any liability on a claim that is determined under § 502 as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under § 501, and whether or not a claim based on any such debt or liability is allowed under § 502. *See* 11 U.S.C. § 727(b). The parties disagree as to whether the exception in § 523(a)(3)(A) applies in this case. That subsection provides an exception to discharge for debts

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to

whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing....

11 U.S.C. § 523(a)(3)(A).

Dawson argues that § 523(a)(3)(A) does not automatically prevent him from discharging the alleged debt, and that several cases have made exceptions where the failure to list the alleged debt was due to inadvertence and the creditor was not prejudiced by the failure because there were no assets available for distribution in the bankruptcy case. Dawson denies that he ever executed the guaranty, which was not presented for payment until after the bankruptcy. Thus, Dawson argues that the failure to list the debt was due to inadvertence and Unruh was not prejudiced because there were no assets available for distribution even if Unruh had filed a proof of claim. Unruh, however, argues that the plain language of § 523(a)(3)(A) should control. In addition, Unruh points out that the failure to list the alleged debt deprived him of certain rights in addition to filing a proof of claim, e.g., the right to object to the dischargeability of the debt and to object to Dawson's discharge.

The cases addressing this issue have arisen pursuant to motions to reopen and pursuant to complaints to determine dischargeability. Although Dawson's motion to reopen has already been granted, the reasoning from cases addressing motions to reopen nevertheless applies. The cases ruling on motions to reopen necessarily address the dischargeability issue under § 523(a)(3)(A) in determining whether reopening would result in relief being afforded to the debtor. If the debt will not be discharged, reopening would not result in relief being afforded to the debtor. *See* 11 U.S.C. § 350(b) (providing that a case may be reopened to administer assets, to accord relief to the debtor, or for other cause); *In re Karamitsos*, 88 B.R. 122, 123 (Bankr. S.D.Tex.1988) (holding that discharged no-asset Chapter 7 cases are not to be reopened for the purpose of listing creditors,

as such reopening would be meaningless). In the present case, Dawson was allowed to reopen and to address the dischargeability issue pursuant to an adversary proceeding. *See In re Musgraves,* 129 B.R. 119, 121 n. 5 (Bankr.W.D.Tex.1991) (noting that some courts may be willing to reopen solely to entertain an adversary proceeding to determine the dischargeability issue under § 523(a)(3), but holding that such reopening is unnecessary because other courts, including state courts, have concurrent jurisdiction to make that determination).

■ Section 523(a)(3) is derived from § 17a(3) of the Bankruptcy Act. *Laczko v. Gentran, Inc. (In re Laczko),* 37 B.R. 676, 678 (9th Cir. BAP 1984), *aff'd without opinion,* 772 F.2d 912 (9th Cir.1985). Two lines of cases developed under § 17a(3). Cases following the liberal rule

> held that bankruptcy courts have the discretion to invoke their equity powers to allow amendment of schedules after the expiration of the claims period under exceptional circumstances, and the court suggested such circumstances exist where (1) the case is a no-asset one, (2) there is no fraud or intentional laches, and (3) the creditor was omitted through mistake or inadvertence.

37 B.R. at 678. Cases that applied a stricter construction of § 17a(3) refused to reopen the bankruptcy case in a no-asset case to amend the schedules to include an inadvertently omitted claim and permit discharge of the debt. *Id.* In the present case, the Bankruptcy Court correctly followed the latter line of cases, which refuse to disregard the clear language of the statute.

The language of § 523(a)(3)(A) clearly denies discharge of a debt that is not scheduled in time to permit timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing. The parties have stipulated that neither Unruh nor AWT were listed as creditors and neither had notice nor actual knowledge of the case at any time before it was closed. Rule 3002(c) of the Federal Rules of Bankruptcy Procedure provides

that, in a Chapter 7 case, a proof of claim must be filed within 90 days after the first date set for the meeting of creditors. Rule 3002(c)(5) permits an extension of the deadline for filing proofs of claim "[i]f notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible." In the present case, a "notice of no dividend" pursuant to Rule 2002(e) was not given and therefore the deadline to file proofs of claim expired before Unruh had any notice or knowledge of Dawson's bankruptcy. Thus, Unruh was deprived of his right to file a proof of claim or to otherwise participate in the bankruptcy proceeding.[2] Among other things, he was denied the right to object to discharge or dischargeability, or to file a motion to dismiss the bankruptcy.

Our case is clearly distinguishable from cases in which a "notice of no dividend" had been given. In those cases, the creditor's right to file a proof of claim would be preserved and the creditor would have the opportunity to file a proof of claim if subsequent assets were found. *See Stark v. St. Mary's Hospital (In re Stark),* 717 F.2d 322 (7th Cir.1983) (holding that where a notice of no dividend was given, a debtor may reopen to add an omitted creditor where there is no evidence of fraud or intentional design, because the creditor would have the right to file a proof of claim if subsequent assets are found). Therefore, in those cases, the debt would be scheduled in time to permit a timely filing of a proof of claim within the language of § 523(a)(3)(A).

## CONCLUSION

For the reasons set forth herein, the Court concludes that any debt which Dawson may owe to Unruh on the alleged guaranty is excepted from discharge under 11 U.S.C. § 523(a)(3)(A). Accordingly, the judgment of the Bankruptcy Court is hereby affirmed.

---

**2.** There is also an open question as to whether the discharge could be effective without prior notice on constitutional due process grounds. *In*

*re Guzman,* 130 B.R. 489, 491 n. 2 (Bankr. W.D.Tex.1991).