In re John R. TUCKER d/b/a John R. Tucker Roofing & Siding, Debtor.

AMERICAN CREDIT SERVICES, INC., Plaintiff,

v.

John R. TUCKER d/b/a John R. Tucker Roofing & Siding, Defendant.

Bankruptcy No. 91–21046.
Adv. No. 92–2002.

United States Bankruptcy Court,
W.D. New York.

Aug. 12, 1992.

Edward J. Massare, Rochester, N.Y., for debtor/defendant.

David L. Rasmussen, Rochester, N.Y., for plaintiff.

## MEMORANDUM AND OPINION

JOHN C. NINFO, II, Bankruptcy Judge.

### BACKGROUND

This Adversary Proceeding involves the question of whether, in a no-asset Chapter 7 case where there was a notice to creditors pursuant to Rule 2002(e) directing them not to file claims unless later notified to do so, a creditor's claim which was added to the schedules after the debtor was discharged and the case was closed is nondischargeable under Section 523(a)(3)(A).

Both parties have stipulated to the facts. The debtor, John R. Tucker (the "Debtor"), filed a voluntary petition for relief under Chapter 7 on April 18, 1991. He failed to list in his schedules an obligation owed to American Credit Services, Inc. ("ACSI") in the amount of $1,712.20 (the "ACSI Debt") which arose under a December 15, 1987 lease of a 1988 Chevrolet pickup truck.

The leased truck was repossessed by ACSI for nonpayment on September 5, 1990 and was sold on September 19, 1990. There was a deficiency balance of $1,712.20. On December 28, 1990 ACSI sent a letter to the Debtor informing him of the deficiency balance. This letter was sent to 1133 Webster–Fairport Road. However, the Debtor had moved out of that residence in April of 1990 after his spouse commenced an action for divorce. The Debtor has resided at 514 Hurstbourne Road since April, 1990.

A Section 341 meeting notice (the "No Asset Notice") was sent on May 2, 1991 informing creditors that this was a no asset case and advising them, "DO NOT FILE CLAIM UNLESS LATER NOTIFIED TO DO SO." The Chapter 7 trustee reported that this was a no asset case on July 3, 1991, the Debtor was granted a discharge on July 26, 1991 and the bankruptcy case was closed on September 23, 1991.

The Debtor claimed that he did not receive actual notice of the deficiency until after September 23, 1991 when an employee of ACSI telephoned him at his Hurstbourne Road address. In October 1991 the Debtor was allowed by the Court to reopen his bankruptcy case, and he brought a motion to amend his schedules to add the ACSI Debt.

On November 14, 1991 the Honorable Edward D. Hayes, now retired, granted the Debtor's motion to amend his schedules to add ACSI as a creditor and ordered that ACSI had sixty days to object to the ruling. On January 10, 1992 ACSI commenced the instant proceeding by timely serving a Summons and Complaint requesting that the ACSI Debt be determined not to be discharged in accordance with Section 523(a)(3)(A).

## DISCUSSION

The Bankruptcy Code and the bankruptcy system afford honest debtors a number of extraordinary rights and remedies. In a Chapter 7 case, one of the most important of these remedies is the ability to obtain a discharge from all pre-petition debts not otherwise excepted from discharge by Section 523. To obtain this extraordinary relief, the Bankruptcy Code and the bankruptcy system require relatively little from a debtor: only that he or she comply with the provisions of Section 521 and that the debtor is not otherwise ineligible for a discharge by reason of the provisions of Section 727.

One of the debtor's duties as set forth in Section 521 is to file a complete list of creditors and a schedule of liabilities.[1]

█ The Debtor must exercise great care when completing the schedules so as to include *any* creditor that has any arguable grounds for asserting a claim against him. *In re Lorenzen,* 21 B.R. 129, 131 (Bankr.N.D.Ohio 1982); *In re Gilbert,* 38 B.R. 948, 950 (Bankr.N.D.Ohio 1984). The failure to schedule a creditor or a liability may result in the denial of the debtor's overall discharge under Section 727 or the exception of the unlisted debts from the debtor's discharge under Section 523. Section 523(a)(3) provides that debts which have not been duly scheduled in time to allow the creditor to exercise certain rights are excepted from discharge, unless the creditor had notice or actual knowledge of the case in time to exercise those rights.[2]

The courts have often emphasized the expectation that the debtor and his or her attorney will exercise special care in preparing the schedules. "In view of the severe penalties for false statements, ... the denial of a discharge for the same reason, ... and the failure of a discharge to apply to unscheduled debts, ... a bankrupt is well advised to put down every conceivable obligation without any reservation." *Commercial Banking Corp. v. Martel,* 123 F.2d 846 (2d Cir.1941); *3 Collier on Bankruptcy,* ¶ 521.03 at 521–14, n. 11 (15th Ed. 1992).

Prior to August 1986 when this Court began to use the No–Asset Notice permitted by Rule 2002(e), there was a bar date set for the filing of proofs of claim in all Chapter 7 cases whether they be asset or no-asset cases. This Court, as many courts before it, began using the No–Asset Notice for its administrative convenience so that it would not have to file and process thousands of claims in no-asset cases, unnecessarily devoting significant clerk's time and creating the need for additional storage. Clearly in exercising this administrative option no thought was given to its impact on the substantive provisions of Section 523(a)(3). Had this Court not opted for the No–Asset Notice, a bar date would have been established in this case. Since ACSI's claim would not have been discovered by the Debtor until after the bar date, *Milando v. Perrone,* 157 F.2d 1002 (2d Cir.1946) would have controlled and ACSI's claim would be nondischargeable in accordance with the provisions of Section 523(a)(3)(A).

█ However, numerous well reasoned and well written decisions have held that once the creditor has received actual notice and has knowledge of the case, in the ab-

---

1. § 521. Debtor's duties. The debtor shall—
    (1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs;

2. § 523. Exceptions to discharge.
    (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
    (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

    (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
    (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

sence of: (1) an intentional or reckless failure to list a creditor;[3] (2) a failure to list a creditor as part of a fraudulent scheme;[4] (3) prejudice to the creditor from the failure to schedule;[5] or (4) intentional laches,[6] where a No–Asset Notice has been used by the Court and therefore the time to file claims has not expired, a pre-petition unscheduled debt otherwise dischargeable is discharged notwithstanding Section 523(a)(3)(A). In this Court's opinion the underlying basis for these holdings is that in the absence of any of the enumerated limiting equitable circumstances developed by the case law, the plain language of Section 523(a)(3)(A) indicates that the only rights of such unscheduled creditors to be protected are the ability to file a proof of claim and to share in any dividend. *In re Crum*, 48 B.R. 486, 491 (Bankr.N.D.Ill. 1985). Therefore, in such a no-asset case where no claims bar date has been set and the creditor now has actual notice and knowledge of the bankruptcy case and can file a proof of claim or a notice of appearance (assuring that it will be advised if the case becomes an asset case and receive notice of other proceedings in the case), the creditor is not prejudiced. This Court notes that there have been a number of amendments to the Bankruptcy Code and the Bankruptcy Rules since these cases have been published and almost all of the bankruptcy courts have adopted the No–Asset Notice, and no change has been made to Section 523(a)(3)(A).[7]

■ This Court adopts these holdings. In the case at hand the stipulated facts do not indicate that the Debtor's failure to schedule ACSI was intentional, reckless or part of a fraudulent scheme. Nor does it appear that there has been intentional laches or sufficient prejudice to ACSI prior to the time that it learned of the Debtor's bankruptcy case to warrant the ACSI Debt being held to be nondischargeable. Therefore, the debt of ACSI is discharged.

Section 350(b) provides that: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." It is clear that the decision of whether to reopen a case is in the discretion of the Bankruptcy Court. *In re Maddox*, 62 B.R. 510, 512 (Bankr.E.D.N.Y. 1986). Many courts exercise their discretion at the request of a debtor to reopen a no-asset case where a No–Asset Notice had been utilized to allow a debtor to amend his or her schedules to add the claims of previously unscheduled creditors whose claims would otherwise be nondischargeable under Section 523(a)(3)(A). *In re Maddox*, 62 B.R. at 514; *In re Crull*, 101 B.R. 60, 62 (Bankr.W.D.Ark.1989); *In re Tinnenberg*, 57 B.R. 430, 432 (Bankr.E.D.N.Y.1985); *Matter of Stark*, 717 F.2d 322, 323 (7th Cir.1983); *In re Mitchell*, 47 B.R. 209, 213 (Bankr.N.D.Tex.1985).

■ The requests to reopen cases in these circumstances appear to have been the result of an apparent belief on the part of debtors and their attorneys that, where an unscheduled creditor is discovered after the case is closed, the only way to cure the problem presented by Section 523(a)(3)(A) is to add that creditor to the schedules. The focus appears to have been solely on the language, "neither listed nor scheduled ...

---

3. *In re Gray*, 57 B.R. 927, 930 (Bankr.D.R.I. 1986). (Debtor intentionally failed to list certain debts.)

4. *Matter of Stark*, 717 F.2d 322, 324 (7th Cir. 1983) (factors to consider are whether fraud, intentional design or prejudice); *In re Crum*, 48 B.R. 486, 491 (Bankr.N.D.Ill.1985) (would consider whether there was fraud or intentional design).

5. *In re Gilbert*, 38 B.R. 948, 951 (Bankr.N.D.Ohio 1984) (prejudice to creditor since had forced creditor to incur expenses pursuing debt in State Court); *In re Tinnenberg*, 57 B.R. 430, 431

(Bankr.E.D.N.Y.1985) (Debtors intentionally delayed the creditor's post-petition state court proceeding and the creditor incurred significant costs); and *In re Mitchell*, 47 B.R. 209, 211 (Bankr.N.D.Tex.1985) (Bank's collection efforts did not result in sufficient expenditures to find prejudice).

6. *See In re Mitchell*, 47 B.R. 209 (Bankr.N.D.Tex. 1985); *In re Souras*, 19 B.R. 798 (Bankr.E.D.Va. 1982).

7. *See In re Maddox*, 62 B.R. 510, 512 (Bankr. E.D.N.Y.1986) for a discussion of the legislative history of Section 523(a)(3).

in time to permit ... timely filing of a proof of claim," rather than on the creditor having "notice or actual knowledge of the case in time to file a claim." 11 U.S.C. § 523(a)(3)(A) (1991). In this Court's view reopening in such circumstances is not only unnecessary,[8] but it is such an unwarranted administrative burden on the Court and the bankruptcy system that this Court will not reopen cases in these circumstances.

■ The plain language of Section 523(a)(3)(A) and the holding of this Court in this case indicate that if there is a closed no-asset case where a No–Asset Notice has been utilized, so that no bar date has been set and the time to file proofs of claim has not expired, all that is required for the claim of an unscheduled creditor to be discharged is that: (1) the creditor receive notice or actual knowledge of the case so that it can timely file a proof of claim; and (2) there has been no intentional or reckless failure to schedule the creditor, fraudulent scheme, intentional laches or prejudice to the creditor. The determination of whether any of these limiting equitable circumstances exist is, however, not properly addressed by either the act of reopening a case or adding a creditor (adding creditors is done administratively by completing and filing a form in this district). *In re Musgraves*, 129 B.R. 119, 121 (Bankr.W.D.Tex. 1991). Such a determination can only be made either in a state court proceeding, where a debtor can raise his or her discharge as an affirmative defense, or in an adversary proceeding commenced in the Bankruptcy Court pursuant to Rule 7001(6). *In re Crull*, 101 B.R. at 62. Since the State Courts have concurrent jurisdiction, they may well be the best place for that determination if the creditor has already commenced a proceeding in a State Court to collect the unscheduled debt. *In re Musgraves*, 129 B.R. at 121.

The administrative burden on the Court and the bankruptcy system to reopen a case to add previously unscheduled unsecured creditors in circumstances such as the case at hand is significant. The Court must process the application to reopen and the Order allowing the case to be reopened. The Office of the United States Trustee must then reappoint or appoint a Trustee, the Court must process the amendment forms and ultimately the Trustee must be discharged and the case reclosed. All of this is a significant administrative burden on the bankruptcy system, and it does not accomplish anything more under Section 523(a)(3)(A) than would be accomplished by the debtor or his or her attorney upon learning of an unintentionally, inadvertently or innocently unscheduled creditor immediately giving that creditor the complete details of the debtor's bankruptcy case. The creditor could be provided with a copy of the original 341 meeting notice, encouraged to file a notice of appearance and a proof of claim with the Bankruptcy Court (in this district neither of these filings require that the case be reopened) and given the citation to this and other relevant decisions.

If debtors and their attorneys have taken seriously the mandate of Section 521(1) and the Courts which have addressed this important duty and listed every possible entity to which the debtors may be indebted, including any conceivable contingent and unliquidated claim, the number of cases where an unscheduled creditor surfaces after the case has been closed should be very few. If the ensuing discussions with the creditor (which to avoid any additional unnecessary prejudice to the creditor should take place immediately upon the discovery of the creditor) raise genuine issues as to whether the circumstances are such that

---

**8.** Other cases have found reopening an unnecessary exercise in futility. *In re Musgraves*, 129 B.R. 119, 120 (Bankr.W.D.Tex.1990); *In re Mendiola*, 99 B.R. 864 (Bankr.N.D.Ill.1989); *In re Karamitsos*, 88 B.R. 122, 122–23 (Bankr.S.D.Tex. 1988).

[W]here there has been no claims bar date set, whenever an unscheduled creditor holding an otherwise dischargeable claim receives notice of the bankruptcy case, that claim is discharged. For this reason, such creditors are not prejudiced by a reopening of the case to add them to the schedules, although that step is probably not even necessary to obtain a discharge of their claims once they have actual notice of the bankruptcy case.

*3 Collier on Bankruptcy,* ¶ 521.06[2] at 521–24 (15th ed. 1992).

the creditor's claim may be nondischargeable because of an intentional or reckless failure to schedule the creditor, fraud, intentional laches or prejudice to the creditor, the ultimate issue of dischargeability can be determined either in a state court proceeding or in an adversary proceeding commenced in the Bankruptcy Court.

IT IS SO ORDERED.