**In re Gregory S. NEPHEW and Deborah A. Nephew, Debtors.**

No. 98–24923.

United States Bankruptcy Court, W.D. New York.

March 6, 2003.

David D. MacKnight, Esq., Lacy, Katzen, Ryen & Middleman, Rochester, NY, for Debtors.

David T. Corretore, Esq., Webster, NY, for Greece Pediatric.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### BACKGROUND

On December 31, 1998, Gregory S. Nephew and Deborah A. Nephew (the "Debtors") filed a petition initiating a Chapter 13 case. On May 13, 1999, the Court entered an order confirming the Debtors' five-year plan which provided for the payment of the arrearages on the Debtors' home mortgage and a distribution of 17% to unsecured creditors.

On December 13, 1999, at the request of the Debtors, the Court entered an order converting their Chapter 13 case to a Chapter 7 case after they defaulted on their post-petition mortgage payments and the stay was terminated in favor of their mortgage holder.

On December 15, 1999, the Bankruptcy Court Clerk's Office (the "Clerk's Office") mistakenly mailed out a Notice of Order Converting Chapter 7 to Chapter 13 Case (the "Chapter 13 Conversion Notice"), rather than a Notice of Order Converting Chapter 13 Case to Chapter 7 Case (a "Chapter 7 Conversion Notice"). The Chapter 13 Notice advised the Debtors and their attorney that the Debtors were required to file the statements and schedules required by Rule 1007(b) within fifteen days, if those schedules and statements had not already been filed.[1]

The Bankruptcy Court docket shows that at no time after their case was converted from Chapter 13 to Chapter 7, did the Debtors file: (1) an amended schedule of creditors; (2) an amended matrix of

---

1. Even though the Bankruptcy Rules do not require the Clerk's Office to do so, the Chapter 7 Conversion Notice utilized in the Western District of New York also reminds debtors who convert from Chapter 13 to Chapter 7 that, as required by Rule 1019(5), within fifteen days of the date of the Order for Conversion they must file a schedule of any unpaid debts incurred after the commencement of their Chapter 13 case.

creditors; or (3) a schedule of post-petition unpaid debts as required by Rule 1019(5).

On December 30, 1999, a scheduled Section 341 meeting notice (a "No Asset Notice") was mailed to creditors by the Clerk's Office. It informed those creditors that this was a "no asset" case and advised them, "do not file a proof of claim unless you receive a notice to do so."[2]

On February 17, 2000, after the Debtors' Trustee had conducted an adjourned February 9, 2000 meeting of creditors, he filed a no asset report, and on March 28, 2000, the Court entered an order discharging the Debtors (the "Discharge Order").

On January 3, 2003, the attorney for the Debtors filed a motion (the "Discharge Motion") which requested that the Court: (1) reopen the Debtors' Chapter 7 case; (2) grant a temporary restraining order against Greece Pediatric Dentistry, L.L.P. ("Greece Pediatric"), David T. Corretore, Esq. ("Attorney Corretore") and Constable John Soldi, Jr. ("Constable Soldi"), restraining them from enforcing a judgment entered on March 11, 2002 in favor of Greece Pediatric against Deborah Nephew in the Rochester City Court in the amount of $625.08 (the "Greece Pediatric Judgment"); (3) determine that the Greece Pediatric Judgment was void and unenforceable; and (4) require Greece Pediatric to pay the reasonable attorney's fees incurred by Deborah Nephew in enforcing her bankruptcy discharge.

On January 13, 2003, the Court entered an order reopening the Debtors' Chapter 7 case, restraining Greece Pediatric, Attorney Corretore and Constable Soldi from enforcing the Greece Pediatric Judgment pending a hearing on the Discharge Mo-

tion, and setting a hearing on the Motion for January 22, 2003.

The Discharge Motion alleged that: (1) between June 5, 1999 and August 12, 1999, while the Debtors' Chapter 13 case was pending, their daughter had received emergency dental treatment from Greece Pediatric; (2) Greece Pediatric commenced a state court action against Deborah Nephew (the "State Court Action"), obtained the Greece Pediatric Judgment and, in March 2002, had Constable Soldi serve Deborah Nephew's employer with an income execution to enforce the Judgment; (3) after the income execution was served, Deborah Nephew contacted her attorneys; and (4) Deborah Nephew's attorneys then wrote several letters to Attorney Corretore's office wherein they: (a) asserted that the amounts owed to Greece Pediatric had been discharged in the Debtors' Chapter 7 case pursuant to Section 727(b); and (b) demanded that the income execution be withdrawn and the Greece Pediatric Judgment vacated.

On January 21, 2002, Greece Pediatric, by Attorney Corretore, interposed an Objection to the Discharge Motion which alleged that: (1) from June 21, 1999 through July 17, 2000, Greece Pediatric had sent monthly billing statements to the Debtors, including a statement sent by certified mail on January 7, 2000, which Deborah Nephew acknowledged receipt of on January 13, 2000; (2) the Debtors never objected to the unpaid billing statements or advised Greece Pediatric of their bankruptcy; (3) the Corretore law offices sent demand letters to the Debtors on January 28, 2000, August 15, 2000 and August 28, 2000, and received no response from the Debtors; (4) the Debtors never advised Greece Pe-

---

**2.** The No Asset Notice, which also indicated that the Debtors' bankruptcy was originally filed under Chapter 13 on December 31, 1998, and was converted to a case under Chapter 7 on December 13, 1999, fulfilled the obligation of the Clerk's Office to give notice of the conversion of the Debtors' case to another chapter, as required by Rule 2002(f)(2).

diatric directly that they had filed for bankruptcy or that they believed that the amounts due to Greece Pediatric had been discharged in their bankruptcy; (5) in a September 15, 2000 telephone call to Deborah Nephew, initiated by the Corretore Law Offices, Deborah Nephew indicated that the Debtors had gone bankrupt; (6) in April 2001, after nothing further was heard from the Debtors, the State Court Action was commenced by personal service of a Summons & Complaint on each of the Debtors; (7) on January 15, 2002, after no answer was interposed by the Debtors in the State Court Action for more than eight months, the Greece Pediatric Judgment was entered by default; (8) on March 15, 2002, an income execution was served on Deborah Nephew's employer; (9) on or about April 5, 2002, the attorneys for the Debtors were advised that it was the position of Greece Pediatric that the Decision of the Court in *In re Tucker,* 143 B.R. 330 (Bankr.W.D.N.Y.1992), *aff'd,* No. 92–CV– 6407 (W.D.N.Y. July 28, 1993) (*"Tucker"*) did not apply to the facts and circumstances of the Debtors' case; and (10) the Discharge Motion should in all respects be denied, since: (a) the unpaid services were rendered during the Debtors' Chapter 13 case, and the Debtors never notified Greece Pediatric or the Corretore law offices of their bankruptcy before the case was closed; (b) the Debtors had failed, as suggested by *Tucker,* to interpose their alleged bankruptcy discharge as an affirmative defense in the State Court Action; (c) under Section 523(a)(3)(A), the Greece Pediatric Judgment was excepted from discharge in the Debtors' Chapter 7 case since: (i) the Debtors failed to schedule Greece Pediatric as a creditor; and (ii) Greece Pediatric had no actual knowledge of the bankruptcy before the case was closed; and (d) the Debtors had failed to respond to either the unpaid statements or the demand letters sent to them after their

case was converted to Chapter 7 and before it was closed, or the State Court Action.

On January 22, 2003, Greece Pediatric, by Attorney Corretore, interposed an additional Objection that: (1) emphasized: (a) the Debtors' failure to respond to the monthly unpaid statements, the demand letters and the State Court Action; and (b) the costs and expenses incurred by Greece Pediatric as the result of the failures of the Debtors to amend their schedules to include Greece Pediatric or to take the position, immediately after their conversion, that the Greece Pediatric indebtedness would be discharged in their Chapter 7 case; and (2) asserted that *Tucker* did not apply because of the reckless failures of the Debtors and the prejudice sustained by Greece Pediatric.

## DISCUSSION

### I. *In re Tucker*

In *Tucker* the Court held that:

The plain language of Section 523(a)(3)(A) and the holding of this Court in this case indicate that if there is a closed no-asset case where a No–Asset Notice has been utilized, so that no bar date has been set and the time to file proofs of claim has not expired, all that is required for the claim of an unscheduled creditor to be discharged is that: (1) the creditor receive notice or actual knowledge of the case so that it can timely file a proof of claim; and (2) there has been no intentional or reckless failure to schedule the creditor, fraudulent scheme, intentional laches or prejudice to the creditor.

Section 523(a)(3) provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–(3) neither listed nor

scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit–

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]

Section 348(d) provides that,

A claim against the estate or the debtor that arises after the order for relief, but before conversion in a case that is converted under Sections 1112, 1208 or 1307 of this Title, other than a claim specified in Section 503(b) of this Title shall be treated for all purposes as if the claim had been written immediately before the date of the filing of the petition.[3]

Section 727(b) provides that unless a debt is excepted from discharge pursuant to Section 523, a discharge under Section 727(a) discharges the debtor from all debts that arose before the date of the order for relief.

■ In view of the provisions of Section 348(d) and Section 727(b) a post-petition, non-administrative expense claim indebtedness incurred by a debtor in a Chapter 13 case would be discharged under the holding of *Tucker* when the Chapter 13 case is converted to a Chapter 7 case

under Section 1307, even if the indebtedness is not scheduled as required by Rule 1019(5), provided the converted Chapter 7 case is a no asset case, unless: (1) there has been an intentional or reckless failure to schedule the creditor holding the post-petition indebtedness, a fraudulent scheme, intentional laches or prejudice to the creditor; and (2) the indebtedness might otherwise be nondischargeable under Sections 523(a)(2), (4), (6) or (15).

■ However, given the requirement of Rule 1019(5), consumer debtors in the Rochester Division of the Western District of New York whose case has converted from Chapter 13 to Chapter 7 who then assert that *Tucker* should apply to overcome the nondischargeability provisions of Section 523(a)(3) have a heavy burden to demonstrate why their failure to schedule such a post-petition indebtedness was not reckless.

## II. *Intentional or Reckless Failure to Schedule a Creditor in a Case Converted from Chapter 13 to Chapter 7*

■ Rule 1019(5) requires a debtor within fifteen days of conversion to file a schedule of unpaid debts incurred after the filing of the petition and before conversion, including the name and address of the holder of any such claim.

In the Rochester Division of the Western District of New York there should be few, if any, unpaid, post-petition Chapter 13 debts that would be required to be scheduled when a case converts to Chapter 7, since: (1) the standard Order Confirming Chapter 13 plans provides that the debtor is stayed and enjoined from incurring any new debts in excess of $500.00, except such debts as may be necessary for

---

**3.** The services performed by Greece Pediatric would not give rise to a Section 503(b) administrative expense claim.

emergency medical or hospital care, without the prior approval of the Trustee or the Court, unless such prior approval was impractical and therefore cannot be obtained; and (2) at their confirmation hearing debtors are advised by the Court that while they are under its jurisdiction, the Court expects them to pay any post-petition obligations when they become due.

Although the Clerk's Office normally reminds debtors and their attorneys of the requirements of Rule 1019(5) in the Chapter 7 Conversion Notice, there is no requirement in the Bankruptcy Rules that the Clerk's Office provide debtors or their attorneys with that reminder.

The Debtors should have been aware of their obligation under Rule 1019(5), because they have been represented by very experienced bankruptcy attorneys. Furthermore, because of the unpaid statements and the demand letter they had received prior to their 341 meeting in their Chapter 7 case, they were very much aware of their unpaid obligation to Greece Pediatric. Nevertheless, before their case was closed, the Debtors failed to amend their previously filed schedules or to file the schedule required by Rule 1019(5), either of which would have resulted in Greece Pediatric being timely notified of their converted Chapter 7 case.[4]

In this case, given the requirements of Rule 1019(5) and the receipt by the Debtors of unpaid monthly statements from Greece Pediatric pre-conversion and post-conversion through the time the Chapter 7 case was closed, I find that the failures of the Debtors to: (1) respond to the unpaid statements and demands during their Chapter 7 case by specifically advising Greece Pediatric and its attorneys of their pending Chapter 7 bankruptcy case and their position that the indebtedness due to Greece Pediatric would be discharged in their converted Chapter 7 case; or (2) to meet their obligations under Rule 1019(5), constitutes a sufficiently reckless failure to schedule Greece Pediatric, so that *Tucker* does not apply to overcome the nondischargeability provisions of Section 523(a)(3)(A).[5]

### III.  *Prejudice to the Creditor*

I also find that the failure of the Debtors to affirmatively assert a bankruptcy discharge at any time between the entry of the Discharge Order and the filing of the income execution, including their failure to interpose an asserted bankruptcy discharge as an affirmative defense in the State Court Action, has resulted in sufficient prejudice to Greece Pediatric that *Tucker* does not apply to overcome the nondischargeability provisions of Section 523(a)(3)(A).

Although when read together Sections 348(d) and 727(b) make a post-petition Chapter 13 indebtedness eligible for discharge in a converted Chapter 7 case, that result is counterintuitive for most creditors and attorneys who understandably may believe that a post-petition indebtedness incurred by a consumer debtor who was under the jurisdiction of the Bankruptcy Court and never advised the creditor that

---

**4.** At least one panel trustee requires debtors to file a Rule 1019(5) schedule in all converted cases, even if it simply lists "none," and all trustees at their 341 meetings inquire as to whether the schedules filed by the debtors include all of their debts and creditors.

**5.** Since the services provided by Greece Pediatric were emergency medical services and

at the time the Debtors were not in default on their post-petition mortgage payments, there is no basis for an assertion that the indebtedness was knowingly incurred when a conversion to Chapter 7 was contemplated, and, therefore, possibly nondischargeable under Sections 523(a)(2)(A) and 523(a)(3)(B).

they were in bankruptcy when they incurred the indebtedness would be required to be paid.

In this case it appears that Deborah Nephew did nothing more in September 2000, than to indicate that the Debtors had been bankrupt. It does not appear, as contemplated and strongly suggested by *Tucker*, that she made a specific and detailed assertion that the Greece Pediatric debt was discharged in the Debtors' bankruptcy because of *Tucker*.[6] Furthermore, the Debtors failed to interpose the asserted discharge as an affirmative defense in the State Court Action, again as strongly suggested by *Tucker*, in order to avoid exactly the kind of prejudice to an unscheduled creditor that has occurred in this case.

In this case, given the relatively small amount of the Greece Pediatric Judgment, the unnecessary costs and expenses incurred and time spent by Greece Pediatric and its attorneys in connection with the: (1) post-conversion unpaid statements and demand letters; (2) phone calls by the Corretore law offices; (3) State Court Action; (4) entry of the Greece Pediatric Judgment and the related enforcement proceedings; and (5) responses required to the Discharge Motion, constitute the very type of substantial prejudice that makes *Tucker* inapplicable.

For this Court to discharge the Greece Pediatric Judgment given the many failures of the Debtors, would afford them a head start rather than a fresh start.

## IV. *Overview*

*Tucker* contemplates, and strongly suggests, that a debtor, who has inadvertently failed to schedule a creditor in an originally filed Chapter 7 case, in order to have that creditor's debt discharged, notwithstanding the provisions of Section 523(a)(3)(A), take affirmative steps as soon as possible after it becomes clear that the creditor was unscheduled to: (1) advise the creditor of the bankruptcy and its details, including that it is a no asset case; (2) provide that creditor or the creditor's attorney with a copy of the *Tucker* decision to support the position that in the Western District of New York the unscheduled debt was or will be discharged.

The primary purpose of the expectation that a debtor will be proactive in advising the unscheduled creditor of the bankruptcy and the holding of *Tucker* is to insure that there will be no prejudice to the unscheduled creditor. Since the holding in *Tucker* has not been accepted by all Bankruptcy Courts, it would never be enough for a debtor to simply advise the unscheduled creditor of the debtor's bankruptcy, especially if the creditor or its attorneys are from a jurisdiction that has not accepted the *Tucker* rationale.

As discussed more fully in this Decision & Order, in order to have the benefit of the *Tucker* holding, the debtor must demonstrate that there was an inadvertent failure to schedule the creditor, and the debtor's explanation must be reasonable. Notwithstanding this Court's emphasis on the importance of Debtors fulfilling their Section 521 duties and taking great care to complete their schedules and list all of their creditors, the Court is aware that some consumer Chapter 7 debtors have many consumer obligations, some of which can be quite old, and sometimes they simply forget about them.

---

**6.** If Deborah Nephew had actual knowledge that there was an argument that the Greece Pediatric indebtedness was discharged in the Debtors' Chapter 7 case because of Sections 348(d) and 727(b) and *Tucker,* she must have also known of the scheduling requirement of Rule 1019(5).

However, in a case converted from Chapter 13 to Chapter 7, where there should be few, if any, unpaid post-petition Chapter 13 pre-conversion debts, the debtor bears an extremely heavy burden to demonstrate why the scheduling requirements of Rule 1019(5) have not been complied with.

In this case, there is really no reasonable explanation for the Debtors' failure to schedule Greece Pediatric during their converted Chapter 7 case. They were receiving monthly unpaid statements and even an attorney demand letter, so they were certainly aware of the unpaid indebtedness. Furthermore, there is no evidence that the Debtors took the required proactive detailed steps to advise Greece Pediatric or its attorneys of their position with regard to *Tucker* and Section 523(a)(3)(A) before there was sufficient prejudice to Greece Pediatric to make *Tucker* inapplicable.

## *CONCLUSION*

On the facts and circumstances of this case, there has been a sufficient showing of a reckless failure to schedule Greece Pediatric and a substantial prejudice to Greece Pediatric, so that the holding in *Tucker* is not applicable. The Discharge Motion is in all respects denied and the Greece Pediatric Judgement is excepted from discharge under Section 523(a)(3).

**IT IS SO ORDERED.**