In re Gregory S. NEPHEW and
Deborah A. Nephew,
Debtors.

No. 98–24923.

United States Bankruptcy Court,
W.D. New York.

May 13, 2003.

David D. MacKnight, Lacy, Katzen, Ryen & Middleman, Rochester, NY, for Debtors.

David T. Corretore, Webster, NY, for Greece Pediatric.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### BACKGROUND

On March 6, 2003, a Decision & Order was entered in this case (the "Denial Decision") that was reported at 290 B.R. 202 (Bankr.W.D.N.Y.2003).[1] The Denial Decision determined that the Greece Pediatric Judgment, entered against the Debtors nearly two years after their Chapter 7 case was closed, for an unpaid debt they incurred in a Chapter 13 case prior to its voluntary conversion to the Chapter 7 case, was nondischargeable under Section 523(a)(3)(A). This Court determined that the facts and circumstances presented indicated that: (1) the Debtors had recklessly, if not intentionally, failed to schedule Greece Pediatric as a creditor when they converted to Chapter 7; and (2) Greece Pediatric had been sufficiently economically prejudiced by the Debtors' actions and inactions that discharging the Greece Pediatric Judgment would not be justified under this Court's decision in *In re Tucker*, 143 B.R. 330 (Bankr.W.D.N.Y.1992)

---

1. This Decision & Order will use the same defined terms as used in the Denial Decision.

*aff'd,* No. 92–CV–6407 (W.D.N.Y. July 28, 1993) (*"Tucker"*).[2]

On March 14, 2003, the Debtor filed a motion to amend the Denial Decision (the "Motion to Amend") which requested that the Court determine that the Greece Pediatric Judgment had been discharged. The Motion and a related Reply Memorandum asserted that: (1) contrary to *Tucker* and the Denial Decision, the decision in *In re Refino,* 288 B.R. 320 (Bankr.D.Conn. 2003) (*"Refino"*) and various cases cited in *Refino* had correctly determined that in a closed No Asset Notice Chapter 7 case equitable factors such as those set forth in *Tucker* were irrelevant to the determination of dischargeability under Section 523(a)(3), even if a debtor intentionally failed to schedule a creditor[3]; (2) this Court erroneously determined in *Tucker* and the Denial Decision that, once the case was closed, a debtor in a Chapter 7 case who failed to schedule a creditor, including a debtor who had failed to schedule a post-petition pre-conversion Chapter 13 debt, was required to do more than simply advise the unscheduled creditor that there had been a bankruptcy;[4] and (3) in a closed No Asset Notice Chapter 7 case the only right of an unscheduled creditor that the Court must protect is that creditor's right to share in any future distribution.

## DISCUSSION

### I. Equitable Factors

It is important to keep in mind that this Court has elected, for administrative convenience only, to utilize the option afforded by Rule 2002(e)[5] to employ the No Asset Notice procedure. As a result, the Clerk's Office does not have to file and process thousands of claims in no asset cases, unnecessarily expending the time of deputy clerks and creating the need for additional

2. In *Tucker,* this Court held that if there is a closed, no asset case where an optional No Asset Notice has been utilized pursuant to Rule 2002(e), so that no bar date has been set and the time to file proofs of claim has not expired, all that is required for the claim of the unscheduled creditor to be discharged is that: (1) the creditor receive notice or actual knowledge of the case so that it can timely file a proof of claim; and (2) there has been no intentional or reckless failure to schedule the creditor, fraudulent scheme, intentional laches or prejudice to the creditor. The determination of whether any of these limiting equitable circumstances exist may be made either in a state court proceeding where a debtor can raise his or her discharges in an affirmative defense, or in an adversary proceeding commenced in the Bankruptcy Court pursuant to Rule 7001(6).

3. In a footnote in *Refino,* the Court, referencing *In re Boland,* 275 B.R. 675 (Bankr. D.Conn.2002), noted that "it is never appropriate for a debtor to omit a claim intentionally from a debtor's schedules [even if the debtor intended that such debt not be discharged] ... because a debtor has a statutory duty to file an accurate schedule with claims." *Refino,* 288 B.R. at 322

4. The Debtors asserted that the decision in *In re Medaglia,* 52 F.3d 451 (2d Cir.1995) made it clear that in a Chapter 7 case an unscheduled creditor, having obtained notice or knowledge of a bankruptcy, has the burden to determine whether, under all of the facts and circumstances surrounding that debtor's bankruptcy, its unscheduled debt is dischargeable.

5. Rule 2002. Notices to Creditors, Equity Security Holders, United States, and United States Trustee.

(e) Notice of no dividend
In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.
FED. R. Bankr.P. Rule 2002(e).

storage.[6] As discussed in *Tucker*, had this Court not opted for the No Asset Notice administrative convenience procedure, a bar date would have been established in the Debtors' case, and, based upon the facts and circumstances presented, the Greece Pediatric Judgment would have been determined to be nondischargeable under Section 523(a)(3)(A).

■ The utilization of an optional administrative convenience procedure was never intended by this Court to reward a Chapter 7 debtor by allowing that debtor to pull out and hide behind a bankruptcy discharge trump card after he or she had: (1) intentionally, recklessly or, in some cases perhaps maliciously, failed to perform the scheduling duties required by Section 521 and Rule 1007, or Rule 1019 in cases converted from Chapter 13; and (2) prejudiced an unscheduled creditor by knowingly allowing that creditor to expend unnecessary time and incur substantial costs and expenses in prosecuting or collecting its unscheduled debt.

A holding, such as in *Tucker* and the Denial Decision, that unscheduled debts are not automatically discharged in a closed No Asset Notice Chapter 7 case affords the unscheduled creditor the opportunity to raise the limited equitable issues detailed in *Tucker* before the Bankruptcy Court or a State Court with concurrent jurisdiction. This will ensure that those courts can address any abuse of the bankruptcy system or unnecessary prejudice to an unscheduled creditor caused by debtors who fail to meet their scheduling

obligations and other obligations to the bankruptcy system and their creditors.

■ In some cases the actions or inactions of such a debtor may have caused sufficient economic prejudice to the unscheduled creditor that, given a relatively small balance due on the unscheduled debt, it is easier for the Court to simply determine the debt to be nondischargeable under Section 523(a)(3)(A), as this Court did in the Denial Decision. That saves the court from having to: (1) hold additional expensive hearings in order to determine the reasonable value of attorney's fees and other costs incurred by the unscheduled creditor;[7] and (2) issue an order requiring that debtor to compensate the unscheduled creditor for its economic loss. In other cases, when the balance due on the unscheduled debt is large when compared to the economic prejudice to the unscheduled creditor, the Court may require the unscheduled creditor to be made whole for the unnecessary time it expended and the expenses it incurred, and then discharge the balance of the unscheduled debt. In other cases, depending upon all of the facts and circumstances, the Court can fashion appropriate relief.

## II. *Obligations of the Debtor to Unscheduled Creditors*

■ I agree with the Debtors that in an open Chapter 7 case, if an unscheduled creditor receives notice or actual knowledge of the pending Chapter 7 case from the debtor or otherwise, the creditor has the burden to take the necessary steps to protect its claim and ensure that

---

6. When Case Management/Electronic Case Filing is fully implemented in the Bankruptcy Court system and proofs of claims are effectively treated, it may be that Bankruptcy Courts will no longer utilize the No Asset Notice procedure, because electronically filed claims will not present additional workload and storage problems for the Clerk's Office.

7. If the debt is determined to be nondischargeable, the time expended and the costs and fees incurred would presumably be approximately the same as they would have been if there had been no bankruptcy.

it does not violate the automatic stay provided by Section 362. However, as stated in *Tucker* and the Denial Decision, this Court believes that once a No Asset Notice Chapter 7 case is closed, when the debtor becomes aware that an unscheduled prepetition creditor is taking actions to enforce or collect its debt, the burden shifts to the debtor to fully advise the unscheduled creditor of: (1) the details of the closed bankruptcy case; (2) the reasons why the creditor was not scheduled; (3) the fact that the Bankruptcy Court for the Western District of New York utilizes the optional Rule 2002(e) No Asset Notice procedure; and (4) the Court's decision in *Tucker*, or the Denial Decision in a case converted from Chapter 13, emphasizing that it is the debtor's intention to ensure that there will be no additional economic prejudice to the unscheduled creditor in connection with its unscheduled debt.

### III. *Rights of the Unscheduled Creditor*

█ Unlike the Debtors, this Court believes that an unscheduled creditor in a closed No Asset Notice Chapter 7 case is entitled to more than a mere right to share in any distribution. The unscheduled creditor is entitled to be treated fairly and in good faith by a debtor who has failed to perform its statutory scheduling duties. Such fair treatment specifically includes the right not to be prejudiced, economically or otherwise, by that debtor's failure to immediately take any and all steps necessary to prevent any prejudice to the unscheduled creditor, once the debtor becomes aware that the unscheduled creditor is expending time or incurring expenses to collect its debt because it has no knowledge of the debtor's bankruptcy.

The Debtors have advanced a "no harm, no foul" argument. However, the substantial prejudice to Greece Pediatric and its attorneys, detailed in the Denial Decision, caused by the Debtors' failure to schedule the Greece Pediatric Judgment or address the scheduling failure at the earliest possible point in time, resulted in substantial and unnecessary economic "harm" to Greece Pediatric.[8]

### CONCLUSION

█ For the reasons set forth in the Denial Decision and this Decision & Order, the Motion to Amend is denied. The Court finds, as it did in its Denial Decision, that the Greece Pediatric Judgment is nondischargeable pursuant to Section 523(a)(3)(A). In the alternative, the Court finds that the Debtors must compensate Greece Pediatric for the unnecessary economic prejudice that they have caused in an amount equivalent to the balance due on the Greece Pediatric Judgment as of the date of this Decision & Order, which amount shall accrue interest at nine percent (9%) per annum on the unpaid principal amount of the original Judgment until paid in full.

**IT IS SO ORDERED.**

---

**8.** In this case the Debtors should have addressed the Greece Pediatric debt when they continued to receive unpaid statements during their Chapter 7 case before it was closed.