**In re Theodore DAVIE, Jr., d/b/a Ted Davie, Jr. Farms, Debtor.**

**Theodore Davie, Jr., Plaintiff,**

v.

**Nathan L. Rudgers, Commissioner of Agriculture and Markets of the State of New York, Defendant.**

**Bankruptcy No. 98–20847.**
**Adversary No. 03–2051.**

United States Bankruptcy Court,
W.D. New York.

Dec. 12, 2003.

**434**

David L. Rasmussen, Harris, Beach et al., Pittsford, NY, for Debtor.

Hinman, Howard, & Kattell, LLP, Binghamton, NY, for Petitioning Creditors.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### *BACKGROUND*

On March 10, 1998, an involuntary petition initiating a Chapter 7 case was filed against Theodore Davie, Jr. (the "Debtor") by three of his creditors. On the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtor indicated that he had nearly $700,000.00 in unsecured, nonpriority debt, including the amounts owed for purchases of farm products in a business known as Ted Davie, Jr. Farms, Geneva, New York.

On August 11, 1998, the Debtor's Chapter 7 Trustee filed a no asset report. On September 2, 1998, an Order was entered granting the Debtor a discharge (the "Discharge Order") and on November 4, 1998 the Debtor's Chapter 7 case was closed.

The Debtor failed to schedule the Commissioner of Agriculture and Markets of the State of New York (the "Commissioner") as a creditor in his Chapter 7 bankruptcy, even though: (1) for the period from July 1, 1995 through June 30, 1997, the Debtor had been a licensed farm products dealer (a "Dealer") under Article 20 of the New York State Agriculture and Markets Law (the "Agriculture Law"); (2) prior to the filing of the involuntary petition, numerous farm products producers (a "Producer") had filed claims with the Commissioner because the Debtor had failed to pay them within the time frames required by the Agriculture Law; and (3) the Agriculture Law: (a) provides for an Agricultural Producers Security Fund (the "Fund"), which pays Producers who have not been paid by a Dealer up to eighty percent (80%) of any unpaid balance due them on allowed and certified claims; and (b) makes a Dealer liable to the Commissioner for the benefit of the Fund for any payments made to Producers.

While the Debtor's case was pending: (1) on June 25, 1998, the Commissioner certified the claims of the nine Producers, scheduled by the Debtor as creditors, for payment from: (a) a $28,000.00 letter of credit the Debtor had posted pursuant to the Agriculture Law; and (b) the Fund; and (2) on September 24, 1998, in a final certification, the Commissioner determined that $155,372.57 was payable to those claimants from the Fund.

Section 250–b of the Agriculture Law provides that if claims are paid by the Commissioner from the Fund, and the defaulting dealer after receiving notice of the payment, has not reimbursed the Commissioner for the amount paid: (1) the Commissioner may issue a warrant for the amount paid to any Sheriff in New York State to levy upon and sell the real and personal property of the defaulting Dealer; and (2) the warrant, when filed with a county clerk, becomes a lien upon the real and personal property of the defaulting Dealer in the same manner as a docketed judgment.

On or about March 17, 2001, the Commissioner issued a warrant (the "Warrant") against the Debtor to the Sheriff of Ontario County for the $155,372.57 that had been paid from the Fund, and in March and April 2001, the Warrant was filed in Albany and Ontario Counties.

On October 17, 2002, the attorneys for the Debtor advised the Commissioner in writing that the Debtor believed that the Commissioner's actions were in violation of the Section 524(a)(1) [1] discharge injunction, and they demanded that he vacate the Warrant against the Debtor. The Commissioner refused to voluntarily vacate the Warrant and asserted that the amount due from the Debtor was a nondischargeable obligation under Section 523(a)(3) because: (1) the Debtor had not scheduled the Commissioner as a creditor in his Chapter 7 bankruptcy; and (2) the obligation that the Debtor had under the Agriculture Law to reimburse the Commissioner for the amounts paid out of the Fund because of his default as a Dealer was a post-petition obligation that arose only when the Fund actually paid the Producers.

On April 10, 2003, after the Court had reopened his Chapter 7 case, the Debtor filed an Adversary Proceeding which requested that the Court: (1) enforce the Section 524(a)(2) discharge injunction; (2) avoid the liens of the Commissioner that resulted from the filing of the Warrant and require the Warrant to be vacated or released; and (3) award monetary damages for the Commissioner's willful of the Section 524(a)(2) discharge injunction.

On July 1, 2003, the Commissioner filed a Motion to Dismiss the Complaint in the Adversary Proceeding and a Memorandum of Law (collectively, the "Motion to Dismiss"). The Motion asserted that: (1) the Court lacked subject matter jurisdiction because the State of New York had Eleventh Amendment sovereign immunity protection; (2) the Complaint failed to state a cause of action, because the statutory liens that resulted from the filing of the Warrant were in connection with a post-petition obligation; (3) the Debtor failed to pay all of his Producers, as required by the Agriculture Law, and when the Commissioner became aware of it, he advertised for claims and established January 23, 1998 as the last day for the filing of claims; (4) ultimately $155,372.57 was paid from the Fund in connection with the prepetition claims of the Producers who had filed claims with the Commissioner prior to the filing of the involuntary petition against the Debtor; (5) the Debtor did not schedule the Commissioner as a creditor in his bankruptcy and the Commissioner had no notice or knowledge of the Debtor's Chapter 7 case prior to November 4, 1998 when the case was closed; (6) the relief sought by the Debtor, the elimination of the Commissioner's statutory liens is prohibited by the Eleventh Amendment sovereign immunity protection of the Eleventh Amendment; (7) the exception to the Eleventh Amendment sovereign immunity protection provided for in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) ("*Ex parte Young*"), would only be applicable if the Commissioner's statutory liens resulted from a prepetition obligation that was discharged in the Debtor's bankruptcy; (8) the obligation that the Debtor had to the Commissioner arose post-petition by operation of the Agriculture Law and it

---

1. Section 524(a)(1) provides that:
(a) A discharge in a case under this title—
(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141 1228, or 1328 of this title, whether or not discharge of such debt is waived[.]
11 U.S.C. § 524 (2003).

was separate and distinct from the obligations that the Debtor had to the unpaid Producers who were ultimately paid a distribution from the Fund; (9) the Commissioner's statutory liens were not an attempt to collect the amounts due to the Fund as a personal obligation of the Debtor, they only affected his real and personal property; and (10) the Commissioner did not have a claim against the Debtor on the date of the filing of his petition, as the same is defined by Sections 101(5) and 101(12),[2] the only obligation the Debtor had to the Commissioner arose on or about September 24, 1998 when the Commissioner made his final payment from the Fund.

On July 30, 2003, the Debtor filed Opposition to the Motion to Dismiss which asserted that: (1) the Debtor did not schedule the Commissioner as a creditor in his bankruptcy because he was unaware that the Commissioner had any potential claims or rights against him since the Commissioner had not notified him that he might be liable to the Commissioner under the Agriculture Law or taken any actions against him, even though on the date of the involuntary petition the Commissioner had already received all of the claims of the Debtor's unpaid Producers; (2) by paying a portion of the claims of the Producers against the Debtor from the Fund, the Commissioner became subrogated to the claims of those Producers, and those claims were scheduled and discharged in the Debtor's no asset bankruptcy case; (3) by filing claims with the Commissioner, the various Producers, who were paid a portion of their claims against the Debtor from the Fund, transferred their claims, rights and remedies to the Commissioner; and (4) the Commissioner's prepetition claim against the Debtor was discharged under *In re Tucker*, 143 B.R. 330 (Bankr. W.D.N.Y.1992) (*"Tucker"*)[3], because: (a) the Debtor's case was a no asset Chapter 7 case; (b) there was no fraudulent, intentional or reckless failure to schedule the Commissioner; and (c) there has been no laches or prejudice sustained by the Commissioner.

At an August 6, 2003 hearing on the Motion to Dismiss, the attorneys for the Debtor and the Commissioner agreed that, if the Court determined that the Commissioner had a prepetition claim against the Debtor: (1) *Tucker* would apply; (2) *Ex parte Young* would apply; (3) the Debtor's obligation to the Commissioner would have been discharged in his bankruptcy; and (4)

---

**2.** Section 101 provides, in part, that:

(5) **"claim"** means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

(12) **"debt"** means liability on a claim;

11 U.S.C. § 101 (2003).

**3.** In *Tucker,* this Court held that if there is a closed, no asset case where an optional No Asset Notice has been utilized pursuant to Rule 2002(e), so that no bar date has been set and the time to file proofs of claim has not expired, all that is required for the claim of the unscheduled creditor to be discharged is that: (1) the creditor receive notice or actual knowledge of the case so that it can timely file a proof of claim; and (2) there has been no intentional or reckless failure to schedule the creditor, fraudulent scheme, intentional laches or prejudice to the creditor. The determination of whether any of these limiting equitable circumstances exist may be made either in a state court proceeding where a debtor can raise his or her discharges in an affirmative defense, or in an adversary proceeding commenced in the Bankruptcy Court pursuant to Rule 7001(6).

the Warrant should be vacated. At the August 6, 2003 hearing and a September 17, 2003 adjourned hearing, the Court requested that the parties analogize, for bankruptcy prepetition claim and discharge purposes, the Commissioner's claim to: (1) a claim for the clean up of a prepetition existing environmental problem discovered post-petition; and (2) the claim of a surety or guarantor that had not paid the primary obligee as of the date of the petition.

## DISCUSSION

### I. Summary of Decision

On March 10, 1998, when the involuntary petition was filed against the Debtor, the Commissioner had an allowable claim against the Debtor that arose from the Commissioner's rights and remedies and the Debtor's obligations under the Agriculture Law. At the date of the filing of the involuntary petition, the Debtor was obligated to reimburse the Commissioner for any amounts he ultimately paid from the Fund to the Debtor's unpaid Producers. At that time, the amount of the claim was still unliquidated, but it was certain that: (1) the Debtor and his bankruptcy estate were unable to pay the claim of the unpaid Producers; (2) the letter of credit he had posted as a Dealer would not pay the claims of the unpaid Producers; and (3) the Commissioner was going to make a distribution of some amount to the unpaid Producers and, therefore, have rights of reimbursement against the Debtor.

This Court would have allowed a claim by the Commissioner in the Chapter 7 case, subject to: (1) the claim being subordinated under Section 502(e) to the full

payment rights of the Producers; and (2) the unliquidated claim ultimately being liquidated by the Commissioner's unilateral actions of: (a) finally certifying the amounts due to the scheduled Producers who had filed their prepetition Agriculture Law claims with the Commissioner; and (b) paying a portion of those claims from the Fund.

Because the Commissioner had a prepetition claim against the Debtor in his no asset Chapter 7 case, *Tucker* applies, and, since there has been no assertion of any intentional failure to schedule the Commissioner, prejudice or laches, the obligation of the Debtor to reimburse the Commissioner was discharged by the Court's September 2, 1998 Discharge Order and the Commissioner must vacate the Warrant.[4]

### II. The Commissioner's Prepetition Claim

■ Article 20 of the Agriculture Law sets forth a statutory framework involving Dealers, a primary obligor, Producers, primary obligees, and the Fund, administered by the Commissioner, a secondary limited obligor, with rights of reimbursement against a primary obligor, that is essentially the same as the contractual suretyship/guarantor agreements among: (1) contractors for the improvement of real property, subcontractors and bonding companies who have furnished payment bonds; and (2) borrowers, lenders, and the borrower's guarantors.

When the involuntary petition was filed against the Debtor on March 10, 1998:(1) the Debtor had defaulted on the obligations to the Producers that he incurred while he was a Dealer; (2) the Producers had taken all of the necessary steps

---

4. As discussed above, the Commissioner has acknowledged that if he held a prepetition claim against the Debtor which could be discharged under *Tucker,* the Eleventh Amend- ment sovereign immunity protection would not apply to any ongoing failure to vacate the Warrant.

against the Debtor required under the Agriculture Law for them to preserve their rights to collect a portion of their unpaid claims from the Fund; (3) the Commissioner had become aware of the Debtor's default and the attempts by the Producers to collect; (4) the Commissioner had set a January 22, 1998 bar date for claims to be filed by the Producers; (5) the Commissioner was investigating and analyzing the claims of the Producers that had been filed on or before the bar date; (6) the Commissioner knew that the filed claims of the Producers exceeded the $28,000.00 letter of credit that the Debtor had posted pursuant to the Agriculture Law and the Debtor had not and appeared to be unable to pay the Producers, so that once the claims of the Producers were finally determined and approved, they would be receiving a distribution from the Fund; and (7) once that inevitable distribution had been made, the Debtor would be liable to the Commissioner for the amount of that distribution from the Fund, and the Commissioner, for the benefit of the Fund, would have the various rights and remedies provided for by the Agriculture Law.

Except for the fact that the Agriculture Law Article 20 framework is established by statute, rather than by contract, the above-described framework and prepetition scenario is identical to that of: (1) a general contractor filing for bankruptcy with unpaid subcontractors who will ultimately be paid their finally determined and allowed valid claims by the general contractor's bonding company; or (2) a company or individual with an unpaid bank loan that will have to be paid in whole or in part by a guarantor, and there is no question that the general contractor's bonding company and the borrower's guarantor have allowable prepetition claims. It is true that those bonding company and guarantor claims may be subject to subor-

dination under Section 502(e) until the respective subcontractors and bank lender are paid in full, and that, at the date of the filing of the petition, the claims may be unliquidated, because the final amount that those entities must pay has not yet been determined, but they still are allowable prepetition claims under Section 101(5).

To see the statutory framework created by Article 20 of the Agriculture Law as somehow different from the suretyship/guarantor contractual frameworks for purposes of the Bankruptcy Code and its policies and provisions regarding dischargeability and a fresh start, would be the ultimate example of form over substance.

Furthermore, the Commissioner's claim is not independent of the claims of the unpaid Producers. The two are inextricably intertwined in the framework of Article 20. One flows from the other.

■ On the date of the filing of the involuntary petition, the Commissioner had a claim against the Debtor within the meaning and intent of Section 101(5), which is and is intended to be very broad.

### III. *Sovereign Immunity*

As discussed and set forth above, the Commissioner has acknowledged that if he had a prepetition claim: (1) *Tucker* would apply; (2) the *Ex parte Young* doctrine would apply; (3) his prepetition claim would have been discharged by this Court's September 2, 1998 Discharge Order; and (4) he would not be entitled to Eleventh Amendment sovereign immunity protection for any continuing failure to vacate the Warrant, which if not vacated, would violate the Section 524(a)(1) discharge injunction.

### *CONCLUSION*

■ The Commissioner had a prepetition dischargeable claim on March 10, 1998, when the involuntary petition was

filed against the Debtor, and, in accordance with *Tucker*, that claim was discharged by the Court's September 2, 1998 Discharge Order, requiring the Commissioner to vacate the Warrant.

Based upon all of the facts and circumstances presented, the Court will not award damages against the Commissioner in connection with the filing of the Warrant and the failure to vacate it prior to receiving the decision of this Court.

**IT IS SO ORDERED.**